# Richmond

MUTUAL TRANSFER CORPORATION OF GALAX, VIRGINIA, V. COMMONWEALTH OF VIRGINIA.

February 20, 1939.

Record No. 2068.

Present, All the Justices.

The opinion states the case.

*Horace Sutherland* and *S. F. Fulks,* for the appellant.

*Abram P. Staples, Attorney-General,* and *B. E. Estes,* for the appellee.

BROWNING, J., delivered the opinion of the court.

We are concerned here with an appeal from an order of the State Corporation Commission of Virginia, entered on June 22, 1938, imposing a fine of $25.00 upon the Mutual Transfer Corporation of Galax, Virginia, for violation of the motor vehicle law of Virginia, which, in part, is found in section 4097y (7), subsection (e), of the Code of 1936, which is as follows:

"(e) A contract carrier of property may transport on any one motor vehicle over any highway of this State, outside of the corporate limits of any city or town, property of not more than two consignors at the same time, and for purposes of this section the word 'consignors' means the *bona fide* owner of the property transported at the time of shipment, who has made the contract of shipment with the carrier. This limitation shall not apply if the property is transported within the corporate limits of a city or town."

The Mutual Transfer Corporation of Galax, Virginia, the petitioner, will subsequently be referred to as the Transfer Corporation.

It is what is known as a contract carrier operating under a permit granted by the State Corporation Commission on March 26, 1938. As such carrier it is subject to the restrictions and limitations imposed by the provisions of the section just referred to.

The Booze Truck Lines, a Virginia corporation, the relator of the Commonwealth, at the instance of which this proceeding was instigated, is a common carrier holding a certificate of public convenience and necessity, obtained under section 4097y (6), from the State Corporation Commission, engaged in intra-state operation between Roanoke and Galax and Fries, places within the State of Virginia. This

corporation, which will hereafter be referred to as the Truck Lines, filed its petition before the Commission charging the Transfer Corporation with having repeatedly transported property for more than two consignors in violation of the provisions of the law as above set forth and a rule was issued against the Transfer Corporation, to show cause, if any it could, why its permit should not be revoked or suspended, or it be not fined on account thereof.

Section 4097y(10) provides in part as follows: " * * * The Commission may at any time, by its order duly entered after hearing had upon notice to the holder of any certificate, permit or license hereunder, and an opportunity to such holder to be heard, at which it shall be proved that such holder has wilfully made any misrepresentation of a material fact in obtaining such certificate, permit or license, or has wilfully violated or refused to observe the laws of this State touching such certificate, permit or license, or any of the terms of his certificate, permit or license, or any of the Commission's proper orders, rules or regulations, impose a penalty not exceeding $1,000.00, * * *."

The Commission, after hearing the testimony in the proceeding, held that the Transfer Corporation had operated in violation of the law, and imposed upon it the fine as stated above.

The rule against W. F. Worrell, an individual, who was impleaded as a co-offender, was dismissed.

The evidence conclusively shows that the Transfer Corporation, which operated between the same points, along the same highway, as the Truck Lines, transported on various occasions the property of more than two consignors at the same time, on one and the same motor vehicle. Indeed, this is admitted by it, but it undertakes to justify its acts by urging that the parties whose property it transported were its stockholders and that that relationship relieved it from the contemplation of the inhibitory provisions of the law. It further contends that the purpose clause of its charter authorizes the service which it renders to its stockholders. This clause is in the following words:

"(c) The purposes for which it is formed are as follows: To purchase, own and operate motor cars, trucks and vehicles of every kind and description needful and necessary in doing a general transfer business for the mutual benefit of the stockholders of the corporation, and to generally do and perform a general transfer business for the benefit of said stockholders, but not to conduct or carry on the business of a common carrier or public service corporation." These contentions may be plausible, but they are not sound.

As to the first defense referred to, we note that the statute, which we have quoted, in enumerating the rights and privileges which it accords to contract carriers of property, makes no reference whatever to the stockholders of a corporation, which may be such contract carrier, and there is nothing contained in the statute which would afford reason for even the suggestion that its stockholders would not come within its inhibitions.

The Commission made a part of the record, its opinion, delivered by Commissioner Hooker, which is a very clear and comprehensive exposition of the case. Upon the point we are now considering we quote from it as follows:

"The property of a stockholder is not the property of the defendant but of the stockholder, and the defendant had no more legal authority to transport property for a stockholder than it had to transport property for a non-stockholder. The fallacy of this contention is plainly apparent when it is noted that some of the stockholders for whom property has been transported are corporations of separate and distinct legal entities. If the contention made here was sound, it would be seen that a corporation could be organized similar to the defendant, stock sold at a dollar per share throughout the State, and the freight of all stockholders transported over the public highways of Virginia without violating the law. If such a view should be upheld, the motor carrier law of Virginia might as well be erased from the statutes and all the enforcement agencies abandoned."

In distinguishing between a stockholder in a corporation and the corporation itself, it has been said that a stockholder is deemed a stranger to the artificial body created by the charter and may sue the corporation for any cause for which any other person might sue it. *Henderson* v. *San Antonio, etc., R. Co.,* 17 Tex. 560, 67 Am. Dec. 675.

■ "Generally, and for most purposes, a corporation is a legal entity distinct from the body of its stockholders. The stockholders of a corporation have no legal title to property which is owned by the entity known as the 'corporation' * * * " 13 American Jurisprudence, section 411, page 465.

If the urged interpretation of the statute obtained, it is seen that its wholesome purpose might be easily thwarted. Without further comment, we dismiss it as wholly lacking in merit.

■■ Equally specious is the reasoning that the stockholders of the Transfer Corporation in the transportation of their property by it are not consignors. One who sends or makes a consignment, one who is a shipper of goods, is a consignor. In the case in judgment, the Transfer Corporation, on more than one occasion, transported between the termini, referred to, property consigned to or delivered to it at the same time and in the same truck by persons, actual or artificial, under the terms of bills of lading, which required acceptance, carriage and delivery of the goods at a specific rate of compensation. They are none other than consignors. All the elements to make them such are present. To state the proposition to the contrary, is to refute it.

Quite recently the court has had occasion to consider cases similar to the one under review. In the case of *Southside Transportation Co.* v. *Commonwealth,* 157 Va. 699, 704, 161 S. E. 895, 896, the court, speaking through Mr. Justice Holt, said:

"In our approach to cases of this character certain general principles may be regarded as established.

" '(1) Existing transportation systems should be protected so far as compatible with the public interest. There should be no unreasonable or unnecessary duplication of service, to the point that efficient service is made impossible. Subject to these limitations, when the public convenience and necessity require it, the certificate should be granted.' *Norfolk Southern R. Co.* v. *Commonwealth*, 141 Va. 179, 126 S. E. 82, 85.

" 'The only limitation on competition is that written into the motor vehicle law, chapter 161, Acts of the General Assembly of Virginia 1923 (Extra Sess.), page 195. There, in section 3, new permits are forbidden when public convenience and necessity are already reasonably served. Public convenience is always the paramount consideration. For unnecessary duplication of transportation facilities, the public ultimately pays. "Shoestring" competition, in the end, hurts everybody.' *Petersburg, Hopewell & City Point Railway Co.* v. *Commonwealth*, 152 Va. 193, 146 S. E. 292, 294, 67 A. L. R. 931.

"In that case it was also said:

" 'After all, it is to be remembered that these matters are peculiarly within the province of the State Corporation Commission. Among its other duties, it was vested with the supervision of transportation by common carriers and vested also with wide discretion. Its judgments are presumed to be correct, and that presumption in this case has not been overborne.' "

So, here, the order of the Commission is presumed to be correct and, certainly, the presumption has not been overborne, but, to the contrary, is abundantly justified by the evidence.

The holding of this court in the *Southside Transportation Co.* v. *Commonwealth Case, supra,* is quoted with approval in the later case of *Turner* v. *Hicks,* 164 Va. 612, 180 S. E. 543, 547, where it was said, through Mr. Justice Hudgins:

"From the foregoing it is clear that a motor vehicle carrier of property for compensation, who receives a for-hire tag from the Director of the Division of Motor Vehicles, is

not entitled to solicit or receive patronage along the route, or between cities, towns or locations served by motor vehicles operating under a certificate granted by the Corporation Commission."

When the cases cited were decided the statute was not precisely as it is at present, but the principles enunciated in those cases are applicable and determinative.

It remains for us to note the contention of the Transfer Corporation that the wording and meaning of the purpose clause of its charter authorizes it to transport the property of its stockholders without derogation to the provisions of the statute. The expressions relied upon are, "for the mutual benefit of the stockholders of the corporation, and to generally do and perform a general transfer business for the benefit of said stockholders." These are general averments which accentuate the purpose of all corporations which issue capital stock and are conducted for profit. If they were not operated for the mutual benefit of their stockholders, as a general business proposition, the acquisition of their stock would be vain and useless.

The quoted expressions do not confer upon the stockholders any right or privilege which would not be enjoyed by them if such expressions were not employed. In addition to what we have said, the purpose clause of the charter expressly forbids the corporation to conduct the business of a common carrier or public service corporation.

The admitted acts of the Transfer Corporation were in violation of both its charter and statutory provisions.

We affirm the order of the Corporation Commission.

*Affirmed.*