# Wytheville

ROBERT A. FULWILER, JR., TRUSTEE OF JOSEPH SAMUEL
FIRESTONE, BANKRUPT V. CURTIS F. PETERS, RUTH
G. PETERS, RALPH A. GLASGOW, TR., ET ALS.

June 8, 1942.

Record No. 2539.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*V. D. Johnson, Jr., J. T. Engleby, Jr.,* and *Robert A. Fulwiler, Jr.,* for the appellant.

*Irvin A. Harvey* and *Burks, Dudley & Staples,* for the appellee, James A. Bear, Adm'r.

HUDGINS, J., delivered the opinion of the court.

Robert A. Fulwiler, Jr., as trustee of J. S. Firestone, bankrupt, filed a bill alleging that the execution and delivery of two certain deeds of trust on five lots in Roanoke, signed and acknowledged by C. F. Peters and wife, were voidable as to the creditors of J. S. Firestone under the National Bankruptcy Act, because the instruments were executed and delivered within four months from the date of the order adjudicating J. S. Firestone a bankrupt. From an adverse decree plaintiff in the trial court obtained this appeal.

The title to the lots was conveyed to C. F. Peters on August 18, 1936. In 1937, buildings were erected on four of the lots, and C. F. Peters and wife executed four deeds of trust securing their personal notes, totaling $9,289.73, payable to various parties. Plaintiff concedes that these obligations are "valid and subsisting liens * * * on the houses and lots" described in the deeds of trust.

The attack is concentrated on two deeds of trust bearing date January 1, and August 24, 1937, wherein the identical property was conveyed to Ralph A. Glasgow, trustee, to secure three notes totaling $10,450, executed by C. F. Peters and wife and endorsed by the bankrupt. These deeds of trust were acknowledged on February 7, and recorded on February 11, 1938. The notes were formerly held by Miss Katherine McGuirk, who died after this suit was instituted.

J. S. Firestone was adjudicated bankrupt in the Federal Court for the Western District of Virginia on April 22, 1938, within four months from the date of the recordation of the two deeds of trust in question.

The decision turns upon the proof of the allegation that J. S. Firestone was insolvent on February 7, 1938, and was the absolute owner of the property in question; and that Miss Katherine McGuirk knew or was charged with knowledge of these facts.

For some years prior to 1938 Miss McGuirk, who seemed

to have from twenty to forty thousand dollars invested in real estate or real estate loans, had deposited various sums with Firestone as her real estate agent for investment. Firestone collected interest and principal when due and reinvested the money with Miss McGuirk's approval in other real estate securities.

Firestone informed H. M. Moomaw, a special commissioner in a pending chancery cause, that he would pay $1,750 for the five lots in question. Moomaw, who was authorized to make a private sale of the property, declined to allow Firestone a commission on a sale made to himself. Thereupon Firestone directed Moomaw to convey the property to F. R. Marston, which was done by deed dated August 16, 1936. Two days later, August 18, 1936, Marston conveyed the property to C. F. Peters for an alleged consideration of $2,000. C. F. Peters and wife executed a deed of trust to secure a note payable to Miss Katherine McGuirk for the sum of $1,750. Firestone obtained his commission for consummating the sale, and the balance, less unpaid taxes, was paid to Moomaw. This note and the unrecorded deed of trust were held by Firestone as the property of Miss McGuirk. In 1937 the deed of trust and note were destroyed, and the amount of indebtedness was included in the notes secured by the two deeds of trust bearing date of January 1, and August 24, 1937.

Peters for some reason failed to file an answer to the bill or to testify in the case. He did appear by an attorney.

Miss McGuirk filed an answer in which it is stated that she loaned the $10,450 upon the property, relying upon the record title of C. F. Peters. She died on the 16th day of February, 1940, before she was introduced as a witness. Suit was revived in the name of her administrator, and on August 31, 1940, the trial court entered an order permitting the testimony of Miss McGuirk and Firestone, which had been taken in another cause, to be read and considered by the court as evidence in the present suit. In this exhibit it appears that Miss McGuirk knew her money was loaned to Peters for the purpose of erecting four buildings upon the five lots, and that the first money loaned was used in the con-

struction of a house for the home of Peters. She visited Firestone's office rather frequently—sometimes once a week—and she inspected the houses while they were under construction.

There is nothing in this testimony which tends to prove that Miss McGuirk knew that Firestone was insolvent or that he had any interest in the five lots.

Firestone testified that he invested and reinvested funds for Miss McGuirk; that he agreed to go halves with Peters in the purchase of the lots and the construction of the houses thereon; that he held the notes and the unacknowledged deeds of trust as the property of Miss McGuirk until February 7, 1938; that about that time a creditor threatened to sue him unless he paid the obligation within thirty days; that, in order to protect Miss McGuirk's interests, he secured the acknowledgments of Mr. and Mrs. Peters to the deeds of trust on February 7, and had them recorded on February 11, 1938; that he did not know whether Miss McGuirk knew that he had any interest in the property or not, but he endorsed the notes before they were delivered to her; that while he looked after most of the construction of the houses, Peters looked after a part of it. Miss McGuirk knew that he was using the proceeds of these loans to pay the bills for the construction of these houses.

The bankrupt's schedules of assets and liabilities, together with the dates of the liabilities, showed that Firestone was insolvent in February, 1938, but there is no evidence tending to show that Miss McGuirk knew the financial condition of Firestone at any time prior to the petition in bankruptcy. Her action in permitting him to invest her money from time to time would indicate that she was ignorant of his true financial condition.

Firestone, in his schedule of liabilities, listed the notes executed by C. F. Peters and wife, endorsed by him and held by Miss McGuirk, and other liens binding on the five lots; but in this schedule Firestone made the following notation: "The above indebtedness is secured by liens on real estate in the name of C. F. Peters, who was a former partner of the

bankrupt, the equity in said property being part of the partnership assets, and of little or no value at present."

The conduct of Peters, and the conduct and testimony of Firestone, as revealed by this record, lead to but one conclusion; namely, that, in the purchase of the lots and in the construction of the buildings thereon, Firestone and Peters were engaged in a joint speculation in real estate, title to which was held in the name of Peters for the benefit of himself and Firestone; but so far as Miss McGuirk knew, it was an undertaking by Peters alone. She may have thought, and probably did think, that Firestone inspected the construction of the buildings to safeguard her investment therein.

A somewhat similar question was presented to the Massachusetts court in *Carr* v. *Wight,* 259 Mass. 83, 156 N. E. 40. The facts were that the husband, without consulting his wife, caused certain real estate to be conveyed to her for a home for her and his children. Later she, at his request, executed a mortgage to secure Locke the payment of a past-due indebtedness of $1,500. Within four months thereafter the husband was adjudicated a bankrupt. The trustee in bankruptcy instituted the suit to discharge the land from the encumbrance created by the mortgage on the ground that it was a voidable preference. Speaking to the point, the Massachusetts court said: "This is not a case where real estate, title to which stands in the name of the bankrupt, is by him transferred or mortgaged to one of his creditors. Here the title stood in the name of the bankrupt's wife, and Locke took the mortgage to secure a debt without notice or knowledge that she was not the real owner or that her husband had any interest therein. In these circumstances the court rightly ruled, in substance, that the mortgage was not a preference and therefore was not valid under the bankruptcy act."

Plaintiff contends that Miss McGuirk received the two deeds of trust through her agent, Firestone; and that, since Firestone knew of his own insolvency and his personal interest in the five lots, the knowledge of the agent is the knowledge of the principal, and therefore Miss McGuirk

is charged with knowledge that the transfer would effect a preference.

The acts under attack are not the acts of the bankrupt. The execution and the delivery of the deeds of trust were made by C. F. Peters and wife. These deeds of trust were executed and delivered pursuant to an agreement made for the benefit of Miss McGuirk at the time the $10,450 was advanced by her to be expended in the purchase of the lots and the construction of the buildings. After this was done, Peters could and should have executed these instruments with or without the knowledge or consent of Firestone. The fact that Firestone asked or persuaded Peters and wife to execute the instruments at the time does not add to or subtract from Peters' obligation so to do.

It is not clear what possession or dominion Firestone exercised over the property. In order to create a preference by the transfer of property there must be a parting of the property from the bankrupt for the benefit of the creditor and a consequent diminution of the bankrupt's estate. Firestone knew his financial condition and the effect that the execution and delivery of the deeds of trust would have.

The general rule is that knowledge of the agent is imputed to the principal, but there are exceptions, one of which is admirably stated in *Federal Reserve Bank* v. *Duffy*, 210 N. C. 598, 188 S. E. 82, thus: "Where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the principal, or has a motive in concealing the facts from the principal, this rule (of imputed knowledge) does not apply. * * * . Where the agent is dealing in his own behalf, or has personal interest to serve, the knowledge of agent is not imputable to the principal." See *Baker* v. *Berry Hill Mineral Springs Co.*, 112 Va. 280, 71 S. E. 626, L. R. A. 1917F, 303; 2 Am. Jur. 298; *Scott County Milling Co.* v. *Powers*, 112 Miss. 798, 73 So. 792.

The evidence indicates that Firestone, with or without Peters' consent, failed to record the two deeds of trust

securing the payment of the obligation owing to Miss Mc-Guirk until four other deeds of trust, pledging the same property to secure other loans, had been executed and recorded. These acts constituted a fraud upon Miss McGuirk whereby the bankrupt obtained an advantage for himself to the detriment of his principal's interests. Under the circumstances, the knowledge of the agent cannot be imputed to Miss McGuirk even if the transfers attacked be considered preferences within the purview of the bankruptcy statute.

It appears from the evidence in the case that the four buildings in question have a potential market value of $5,500 each, or a total value of $22,000. The value of the vacant lot is not given, but there appears to be a deed of trust on it in the sum of $289.73. The original purchase price of the five lots was $1,750, or $350 each. Hence, a total value of the property appears to be $22,350, against which there are liens totaling a little in excess of $19,500. In addition, it appears that C. F. Peters, or some one for him, has been collecting rents on the buildings since the institution of the suit. Under these circumstances, it was error for the trial court to dismiss plaintiff's bill. The correct procedure would have been to retain the bill, order the proper parties to make an accounting of the rents and profits colected in the interim, and have the property sold under the supervision of the court. On this record it appears that plaintiff is entitled, for the benefit of the creditors of the bankrupt, to one-half of the net proceeds of the rents and profits and one-half of the net proceeds of sale after the payment of legal liens on the property. However, these are matters finally to be determined by a decree of reference.

Appellees moved to dismiss the appeal on the ground that all of the evidence considered by the trial court was not made a part of the record. This contention is based on a decree entered on August 31, 1940, in which it was stated "that the evidence of Katherine V. McGuirk and J. S. Firestone in the suit of *W. D. Equi, Administrator* v. *Katherine V. McGuirk, et als*, be read and considered by the court insofar as the same may be pertinent to the issues raised in this cause, * * * ." On September 25, 1940, a decree was entered at the

suggestion of the court, by which "counsel for respondent agreed to copy such of said evidence as seemed pertinent to the issues involved in this cause and file the same in this cause, it being intended thereby not to deprive the court from a consideration of all such evidence in the said Equi suit as he may deem desirable to consider or pertinent to the issues raised in this cause, but for the convenience of the court, it is ADJUDGED, ORDERED AND DECREED that the said excerpts from said evidence be, and the same hereby are filed in compliance with the understanding of the court and counsel, said excerpts consisting of the evidence of Sam Firestone taken from the suit of *Equi, Administrator* v. *Katherine V. McGuirk*, pages 133 to 144, inclusive, of 'Depositions for Complainant,' and the evidence of Katherine V. McGuirk in said suit, from pages 28 to 37 inclusive, taken from 'Volume II' of said evidence."

Counsel for respondent made excerpts from the testimony taken in the Equi case and filed them as an exhibit to be considered as evidence in this case. Counsel for plaintiff state that they did not think there was any testimony or other evidence taken in the Equi case that was pertinent to the issues in this case, and hence they made no excerpts therefrom. Giving to the language of the decree a most liberal construction, the most that can be said about it is that the trial court was authorized to consider the evidence in the Equi suit, if it so desired. However, the decree of September 25, 1940, entered at the suggestion of the court, indicates that the trial court decided to consider only such evidence in the Equi suit as the parties copied and filed as a part of the record in this cause. These excerpts are duly authenticated and constitute a part of the record before this court. Under these circumstances, we find no merit in appellees' contention.

The decree of the trial court is reversed and remanded for such further proceedings as are consistent with the statements herein contained.

*Reversed and remanded.*