# 𝔖taunton

## J. Wellford Smith, Trustee in Bankruptcy of Dolly C. Smith, Etc. v. Arlington Amusement Corporation.

September 11, 1946.

Record No. 3070.

Present, All the Justices.

The opinion states the case.

*May*, *Simpkins*, *Young & Rudd*, for the plaintiff in error.

*Christian*, *Barton*, *Parker & Boyd* and *Miles Poindexter*, *II*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by J. Wellford Smith, trustee in bankruptcy of Dolly C. Smith, individually, and trading as Rainbow Grill and also as Squire Grill, against Arlington Amusement Corporation for the purpose of avoiding an alleged preferential transfer under the provisions of Section 60 of the National Bankruptcy Act, U. S. C. A., Title 11, Chapter 6, Section 96. All matters of law and fact were submitted to the trial court, without the intervention of a jury. The judge, finding that the transaction in question did not diminish the estate of the bankrupt but rather increased it, entered judgment for the defendant. On appeal the plaintiff contends that the judgment is contrary to the law and the evidence.

The parties will be referred to as plaintiff and defendant, in accordance with positions they occupied in the trial court, and, for further convenience, Dolly C. Smith as bankrupt and Arlington Amusement Corporation, also as Arlington.

The facts are without dispute and may be summarized as follows:

On January 20, 1943, Arlington entered into a written agreement with bankrupt whereby there was leased to her certain premises known as Squire Grill, together with all the equipment, furniture and fixtures therein contained, to be used for conducting a restaurant. Lessee was given an option to purchase the equipment at a price to be agreed on. An assignment or subletting of the premises was prohibited without the written consent of the lessor. The rent was fixed at $250 per month, and Arlington reserved the right of immediate entry and recovery of the premises upon default in the payment of the rent. On January 10, 1945, when bankrupt was approximately 2½ months delinquent in the payment of rent, Arlington and bankrupt entered into an agreement for the sale of the equipment, furniture and fixtures belonging to Arlington, and the surrender of the possession of the premises and personal property by bankrupt to the purchaser, in consideration of certain terms and conditions. The entire agreement is set out in the following letter from Arlington to bankrupt:

"Richmond, Virginia,
January 10, 1945.

"Dear Mrs. Smith:

"We are this day agreeing to sell to Messrs. Foster, all fixtures, equipment, dishes, pots, and pans, cooking utensils, silver, china and glassware and all other articles, except supplies at the Squire Restaurant, No. 305-307 North Sixth Street, Richmond, Virginia.

"It is agreed between you and the undersigned as follows:

"1. Out of the proceeds of this money, when received by us, we will retain the sum of $2,500 for your account,

for a period of sixty days, provided that out of said sum, there is to be appropriated and used: First, so much as necessary to pay the amounts of rent unpaid by you on the restaurant and on 408½ North 8th Street; and, Second, so much further as necessary to pay the amounts of all bills for merchandise and services that you owe in connection with the operation of the SQUIRE Restaurant.

"2. Any part of the $2,500 not needed for payments mentioned in paragraph 1 is to be paid to you at the expiration of said sixty (60) days.

"3. If the rent, merchandise and service debts mentioned in paragraph 1 are in excess of $2,500, you are to pay the excess of said debts.

"4. You will give possession of this restaurant, together with all equipment, dishes, pots and pans, cooking utensils, silver, china and glassware, and all other articles except supplies, to the new purchaser on or before January 15, 1945, and your rent will stop as of the day you give possession and the purchaser will start to pay rent as of that date.

"Very truly yours,

"ARLINGTON AMUSEMENT CORPORATION

"By. . . . . . . . . . . . . . . . . . . . . . . . .

"ACCEPTED:

" . . . . . . . . . . . . . . . . . . . . . . . . . ."

On the same date an agreement of sale was entered into by Arlington as party of the first part, bankrupt as party of the second part and E. D. Foster and L. B. Foster as parties of the third part, whereby it was agreed to sell all of the equipment, furniture and fixtures of the restaurant business known as the Squire Grill to Foster Brothers for the sum of $8,500, to be paid to Arlington "alone." $5,000 was to be payable in cash and $3,500 to be paid on January 15, 1945. Foster Brothers, upon payment of the entire purchase price, were to be given complete and quiet possession of the property, and were thereafter to lease it from Arlington at a rental of $150 per month. On January 15, 1945, payment

having been made in accordance with the agreement, a bill of sale was executed by Arlington and the bankrupt conveying to Foster Brothers all of the equipment, furniture and fixtures therein specifically described.

On April 9, 1945, Mrs. Dolly C. Smith was adjudged a bankrupt by the U. S. District Court for the Eastern District of Virginia, and on May 4, J. Wellford Smith qualified as trustee in bankruptcy. This suit was thereafter instituted on May 24, 1945, by the trustee in bankruptcy to recover the sum of $1,343.92, which Arlington retained out of the sum of $2,500, to cover the amount due it from Mrs. Smith for arrears of rent. A statement rendered to the trustee, dated May 21, 1945, shows that the bookkeeping entry of the credit, in accordance with the agreement of January 10, 1945, was made on January 17, 1945, the day charged by the plaintiff as the date of the alleged preferential transfer. $67.70 was also paid by Arlington to a creditor of Squire Grill, but this is not in controversy here. The remaining portion of the original $2,500 item, amounting to $1,088.38, was paid by Arlington to the trustee in bankruptcy, to be administered as assets for the benefit of creditors.

■ The burden was upon the plaintiff to show that the transaction constituted a preference within the meaning of the provisions of the National Bankruptcy Act.

The applicable portion of that Act, Section 60, U. S. C. A., Title 11, Chapter 6, section 96, reads as follows:

"(a) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapters 10, 11, 12 or 13 of this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. * * *

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time

when the transfer is made, reasonable cause to believe that the debtor is insolvent.  * * * "

█ It thus appears, under the provisions of the above Act, that there are five essential elements that must concur before a preferential payment may be avoided.. These elements are as follows:

(1) A transfer on an antecedent debt; (2) A transfer made by an insolvent debtor; (3) A transfer made within four months before bankruptcy; (4) A transfer resulting in an advance to a creditor; (5) Reasonable cause for creditor to believe the debtor is insolvent.  Remington on Bankruptcy, 5th Ed., Vol. 4A, Section 1567, and cases cited.

█ However, though the above five elements be established and shown to concur, the transfer is not voidable if it be shown that the estate of the bankrupt has not been diminished thereby.

In Remington on Bankruptcy, *supra*, Section 1713, at page 264, it is said:

"When it is apparent that the estate has not been diminished by an impeached transfer, the attack on it must fail. This simple test is often used to summarily dispose of an attack.  If there is no diminution no consideration of either Element 1, A Transfer on an Antecedent Debt, and Element IV, Reasonable Cause for Creditor to Believe the Debtor Is Insolvent, is necessary."

At page 265 it is further said:

"Unless property is actually transferred to a creditor, there can be no diminution of the estate.  Element 1 of a voidable preference, which consists of a transfer of property of the bankrupt to a creditor of an antecedent debt, is absent."

█ Accordingly, some portion of the debtor's property must be appropriated by the transaction, and the estate of the bankrupt thereby diminished.  There can be no depletion of the bankrupt's estate unless the property transferred would otherwise have belonged to that estate.

In *Fulwiler* v. *Peters*, 179 Va. 769, 776, 20 S. E. (2d) 500, Mr. Justice Hudgins said:

"In order to create a preference by the transfer of property there must be a parting of the property from the bankrupt for the benefit of the creditor and a consequent diminution of the bankrupt's estate. * * * "

The facts in the case of *Bachner* v. *Robinson* (C. C. A. N. Y. 1939), 107 F. (2d) 513, were somewhat similar to those here. The defendant, in April, 1934, leased real estate to the bankrupt for a term of twenty-one years. The lessee was adjudged a bankrupt in June, 1936. On April 29, 1936, the lessee entered into a contract to sell and assign its leasehold, together with all of its personal property on the premises. The lessee was in arrears for both rent and taxes, and lessor had the right to evict her. The purchaser of the lease agreed to assume these debts as part of the purchase price. As the lease prohibited an assignment without the written consent of the lessor, the contract of purchase was conditioned on the obtaining of such consent. The lessor refused his consent until the arrears of rent should be paid. The arrears of rent and taxes were paid and the lessor executed consent to the assignment on May 9, 1946.

It was admitted that the lessee was insolvent at the time payment was made to the lessor and that the lessor had reasonable cause to believe lessee insolvent. It was there held that the payment of arrears of rent in order to obtain the lessor's consent to the assignment of the lease did not diminish the bankrupt's estate; but, that on the contrary it increased the assets of estate. In so holding the court said: "To constitute a preference the transfer under attack must diminish the bankrupt's estate."

In the above case payment of arrears of rent out of the proceeds of the sale of the property of bankrupt was required by lessor as a condition for giving consent to assignment of lease. Here payment of arrears of rent out of the proceeds arising from the sale of the personal property of the lessor and an agreement of the purchaser to lease the premises upon which the property was located were required by Arlington as conditions for making sale of its

personal property and consenting to a substitution of the purchasers as tenants.

See also, *Continental, etc., Sav. Bank* v. *Chicago Title, etc., Co.*, 229 U. S. 435, 33 S. Ct. 829, 57 L. Ed. 1268.

The evidence shows that while Arlington was alert to its own interests it exhibited a helpful and friendly attitude towards the bankrupt. Its secretary and treasurer said that in making the sale: "We were just giving her the money in excess of what she owed us." * * * "He (referring to Arlington's rental agent) agreed to give the excess of what she owed us to apply it to the discharge of her bills."

This is borne out by the agreement of January 12 between Arlington and bankrupt. That agreement recites that, "Out of the proceeds of this money, when received by us, we will retain the sum of $2,500 for your account, for a period of sixty days * * * ." It then continues with the conditions upon which that money was to be retained, "provided that out of said sum, there is to be appropriated and used: First, so much as necessary to pay the amounts of rent unpaid by you * * * ; and Second, so much further as necessary to pay the amounts of all bills for merchandise and services that you owe in connection with the operation of the Squire Restaurant." It further continues: "Any part of the $2,500 not needed for payments mentioned in paragraph 1 is to be paid to you at the expiration of said sixty (60) days."

The statement of facts heretofore made shows Arlington had the right to evict bankrupt from the leased premises for the violation of the terms of her lease. None of bankrupt's supplies, her restaurant license, nor the good will of her business were included in the sale. Their value, if any, is not in evidence. The purchase price was paid by Foster Brothers as a condition of acquiring the specific personal property of Arlington and obtaining a lease of the premises. The full sum was required to be paid to Arlington alone. Bankrupt had no interest in so much of the proceeds of the sale as were required to pay the back rent in full. She had a contingent interest only in the balance of the $2,500, sub-

ject to the conditions of her agreement. She had no control over the money designated for the discharge of the rent in arrears. She could not have paid any of her other debts with that money nor did her creditors have any right or control to the funds so earmarked.

Nothing was appropriated to the bankrupt or her creditors until the rent was paid in full. The plan adopted avoided a greater loss to the bankrupt and her creditors. The transaction resulted in an increase rather than a diminution of the bankrupt's estate. It liquidated her debt to Arlington and provided approximately $1,100 for other creditors of bankrupt.

For the foregoing reasons, we are of opinion that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*