## Richmond

GRENCO REAL ESTATE INVESTMENT TRUST
v. NATHANIEL GREENE DEVELOPMENT
CORPORATION

September 1, 1977.

Record No. 760753.

Present: All the Justices.

*Harold R. Bailes* (*Bailes, Lindstrom & Tucker, Ltd.*, on briefs), for plaintiff in error.

*L. B. Chandler, Jr.; Ralph E. Main, Jr.* (*Chandler, Huff, Wood & Early, Ltd.*, on brief), for defendant in error.

CARRICO, J., delivered the opinion of the Court.

On December 21, 1973, the plaintiff, Grenco Real Estate Investment Trust, filed a motion for judgment seeking to recover from the defendant, Nathaniel Greene Development Corporation, the sum of $49,106.53, which the plaintiff alleged it had paid the defendant in real estate commissions for selling certain land. The plaintiff claimed that, because the defendant was not licensed to sell real estate as required by Va. Code § 54-749,[1] a 1970 contract between the parties providing for the commissions was illegal and, therefore, the defendant had unlawfully obtained the commissions.

In due time, the defendant filed grounds of defense. It admitted it was not licensed to sell real estate, but it asserted that the 1970 contract between the parties was valid and binding because, under an "owner" exception contained in Va. Code § 54-734,[2] the defendant was exempt from the licensing

---

[1] In pertinent part, § 54-749 reads as follows:

"It shall be unlawful for any person, partnership, association or corporation, to act as a real estate broker, real estate salesman, or rental location agent or to advertise or assume to act as such real estate broker, real estate salesman, or rental location agent without a license issued by the Virginia Real Estate Commission . . . ."

Under § 54-1.14, a person is guilty of a Class 3 misdemeanor for practicing a profession or occupation without holding a required license.

[2] In pertinent part, § 54-734 reads as follows:

"The provisions of this chapter shall not apply to any person, partnership, association or corporation, who as owner or lessor shall perform any of the acts aforesaid with reference to property owned or leased by them, or to the regular employees thereof, with respect to the property so owned or leased, where such acts are performed in the regular course of, or as and incident to, the management of such property and the investment therein . . . ."

requirement in selling the plaintiff's land. The defendant claimed that, because it owned 5% of the plaintiff's outstanding certificates of interest, in performing the contract it merely had sold "land of which it had a part ownership." The defendant asserted further that, if the contract was illegal, the plaintiff was barred from recovery because, at the time the parties entered into the contract, the plaintiff knew the defendant was not licensed to sell real estate.

The plaintiff demurred to the grounds of defense. The trial court sustained the demurrer in part, holding that the plaintiff would not be barred from recovery even though it may have known the defendant was not licensed to sell real estate. The court overruled the demurrer, however, with respect to the allegation that ownership of the certificates of interest exempted the defendant from the licensing requirement. The court held that, if proved, the allegation would constitute a valid defense to the plaintiff's claim.

The defendant then moved for summary judgment. Upon the plaintiff's admission that it had issued 5.1% of its outstanding certificates of interest to the defendant, the court awarded summary judgment in favor of the defendant and dismissed the plaintiff's claim.

The plaintiff assigns error to the court's holding that ownership of the certificates of interest exempted the defendant from the licensing requirement. The defendant assigns cross-error to the court's ruling that the plaintiff would not be barred from recovery even though it may have known the defendant was not licensed to sell real estate.

The plaintiff is a real estate investment trust formed pursuant to Chapter 9 of Title 6.1 of the Code of Virginia (§§ 6.1-343 to -351). Without discussing the nature of such a trust or the rights of holders of trust certificates, the parties, both in the trial court and here, have treated the plaintiff as a corporation and the defendant as a stockholder therein. Accordingly, for the purposes of this case, we adopt the same treatment. Thus, the question presented by the plaintiff's assignment of error is whether, within the meaning of Va. Code § 54-734, a shareholder is an owner of land of the corporation in which the shares are held.

■ The mere statement of this question suggests a negative answer. Nothing in the statutory language employed in § 54-734 displays any intent to ascribe to the word "owner" a meaning different from what it enjoys in ordinary legal contemplation. Even if, because of the licensing statute's penal nature, we construe the word "owner" liberally in favor of an exemption, we cannot conclude that a shareholder is an owner of land of the corporation in which the shares are held. Such a construction not only would subvert the shareholder's traditional status vis-à-vis the corporation but also would thwart the salutary purpose of the licensing requirement, *viz.*, "to protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons." *Massie* v. *Dudley*, 173 Va. 42, 55, 3 S.E.2d 176, 181 (1939). *See Mutual Transfer Corp.* v. *Commonwealth*, 172 Va. 622, 626-27, 1 S.E.2d 477, 478-79 (1939).

We are of opinion, therefore, that the trial court erred in holding the defendant was an "owner" of the plaintiff's land and thus exempt from obtaining a license to sell the property. This error results in reversal of the award of summary judgment in favor of the defendant. Consequently, we must consider the assignment of cross-error to determine whether the defendant may rely upon the defense that the plaintiff would be barred from recovery if, at the time the parties contracted, it knew the defendant was not licensed to sell real estate.

■ It is well established that, because a contract made in violation of the real estate licensing statutes is illegal, an unlicensed agent cannot recover compensation for his services in negotiating a sale under the contract. *Massie* v. *Dudley*, *supra.* Undecided in this jurisdiction, however, is the question whether a seller may recover commissions already paid if, at the time the contract was executed, he knew the agent was unlicensed.

Although there is authority to the contrary, we believe the better rule is expressed in *Comet Theatre Enterprises, Inc.* v. *Cartwright*, 195 F.2d 80 (9th Cir. 1952), which involved an analogous statute requiring licensing of contractors. There, Comet, a theatre owner, sought to recover from an unlicensed contractor money paid for full performance of a contract to construct a building. The California licensing statute under review provided both a criminal penalty against the unlicensed

contractor and a forfeiture of his right to sue to recover compensation for services. The court said:

> "There is no provision in the [licensing] Act that when the unlicensed persons have completely performed a contract for agreed services and the person so benefited voluntarily has paid the agreed consideration he may recover back the money so paid. Here to add . . . a right in Comet to retain the value of the services of the appellees and also to recover back the fair amount Comet had paid for [the] services is not necessary to effectuate the policy of the statute . . . ." 195 F.2d at 81.

In Virginia, our real estate licensing statutes do not contain a provision permitting a seller of land to recover money voluntarily paid under a wholly performed agreement with an unlicensed agent. But our statutes impose a criminal penalty for failure to obtain a required license, and our case law bars an unlicensed agent from recovering compensation for his services. These sanctions effectuate the policy of the licensing statutes and provide sufficient protection of the public interest. This court, therefore, need not declare a right in the seller to recover money voluntarily paid for the completed services of an unlicensed agent.

We adopt this rule: if, with knowledge that an agent is unlicensed, an owner contracts with the agent to sell the owner's real estate, the services are performed as the contract requires, and the owner pays the stipulated compensation, the owner cannot recover the amount so paid.

This rule is not applicable, however, where the bargained-for performance proves defective. In such a situation, we have expressly held that an unlicensed contractor is liable in *damages for defective performance* even though, at the time the contract was executed, the owner knew the contractor was unlicensed. *Enlow & Son, Inc.* v. *Higgerson*, 201 Va. 780, 113 S.E.2d 855 (1960). *See also Cohen* v. *Mayflower Corp.*, 196 Va. 1153, 86 S.E.2d 860 (1955). The rationale of *Enlow* and *Cohen*, to which we adhere, is that one cannot escape liability for incompetent performance by failing to satisfy a licensing requirement designed to insure competence in a regulated field.

The rationale of *Enlow* and *Cohen*, however, does not aid the present plaintiff. No allegation of the plaintiff's motion for

judgment claims that the defendant's performance of the contract in question was defective in any manner.

■ This brings us to the question whether, upon the present record, it appears that, at the time the contract in dispute was executed, the plaintiff knew the defendant was not licensed to sell real estate. The defendant says this knowledge may be inferred from the allegations of the plaintiff's motion for judgment. We disagree; there is no allegation in the plaintiff's motion from which such an inference may be drawn. The defendant says further that because it was an agent and the plaintiff the principal, knowledge of the defendant's lack of a license is imputable to the plaintiff. But the rule of imputable knowledge is not applicable where, as here, it would serve the interest of the agent to conceal the facts sought to be imputed. *Fulwiler* v. *Peters*, 179 Va. 769, 776, 20 S.E.2d 500, 502-03 (1942).

Whether, therefore, at the time the contract was executed, the plaintiff knew the defendant was not licensed, is an issue requiring proof. But before remanding the case for determination of this issue, we must consider another point raised by the defendant's cross-error, upon which, if sustained, the defendant would be entitled to final judgment.

■ In the trial court, the defendant filed a plea of laches. The court overruled the plea. This was not error; the plaintiff sought in an action at law to enforce, not an equitable right, but a purely legal claim. The action was not subject to the equitable defense of laches. *Finkel Outdoor Products, Inc.* v. *Bell,* 205 Va. 927, 933, 140 S.E.2d 695, 699 (1965).

We affirm the trial court's action with respect to the plea of laches. We reverse, however, the court's holding that the defendant was exempt from obtaining a real estate license to sell the plaintiff's land, and we remove this issue from the case. We reverse also the ruling that the plaintiff would not be barred from recovery if, at the time the contract in question was executed, it knew the defendant was unlicensed, and we remand for further proceedings not inconsistent with the views expressed in this opinion.

*Affirmed in part; reversed in part; and remanded.*