# Harrison & Bates, Incorporated

## V.

# LSR Corporation

Record No. 880815

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* and Lacy, JJ.,
and Poff, Senior Justice

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation on November 1, 1989.

*Andrew J. Ellis, Jr. (George B. Wickham; Mays & Valentine*, on briefs), for appellant.

*James W. Morris, III (Calvin W. Fowler, Jr.; Browder, Russell, Morris & Butcher*, on brief), for appellee.

Senior Justice Poff delivered the opinion of the Court.

The principal issue framed on this appeal is whether a corporation, licensed as a real estate broker under the laws of a sister

state but not under the laws of Virginia, can enforce a contract to split commissions, earned on the sale of real estate in Virginia, with a real estate broker licensed in Virginia.

The question arises from a judgment confirming the verdict of a jury that awarded LSR Corporation (LSR) half the commissions paid Harrison & Bates, Incorporated (H&B). LSR is a North Carolina corporation licensed in that state as a real estate and business brokerage firm. Sherman Kennedy and William Brown are equal owners of LSR, and each is an officer and director of the corporation. Kennedy holds a North Carolina license as a real estate broker, and Brown is licensed in that state as a business broker. Neither LSR, Kennedy, nor Brown is licensed as a real estate broker in Virginia.

H&B is a Virginia corporation licensed in Virginia as a real estate broker. Bank of Virginia (now Signet Bank) granted H&B an exclusive listing for sale of the "Filer Ford" property located on West Broad Street in Richmond. In a letter dated December 30, 1981 addressed to Brown at LSR, Edward Jennings, a licensed broker with H&B, stated: "In the event you are successful in bringing forth a client with whom a sale is consummated, [H&B] agrees to split the paid gross commissions on a 50/50 basis with you."

In the months that followed, Brown and Kennedy came to Richmond with several prospective purchasers and showed them the property. When these efforts failed, they decided that the property would be more marketable if offered as a going business concern, one of a type uncommon in the Richmond community. Pursuing that decision, Brown and Kennedy obtained an option to purchase a nightclub franchise. On September 9, 1982, they formed a new Virginia corporation under the name of "2001 of Richmond, Inc." and became its sole owners, officers, and directors. Four days later, the new corporation acquired an option to purchase the Filer Ford property at a price reduced from $2 million to $1.5 million. Brown and Kennedy subscribed the document as guarantors. On October 15, 1982, the bank sold the property to 2001 of Richmond. The corporation exercised the franchise option, and the nightclub opened for business in March 1983 under the management of Brown and Kennedy.

Although all the money required to purchase the franchise and the real estate and to finance renovation of the building had been contributed by five investors assembled by Brown and Kennedy,

ownership of 2001 of Richmond was divided equally among Brown, Kennedy, and the five investors. In October 1983, the investors bought the interests of Brown and Kennedy and employed new managers.

H&B was unaware of the negotiations LSR conducted with the bank until shortly before the day of sale. Jennings had supplied the bank with a list of the prospective buyers H&B had contacted, and the bank agreed to pay H&B $70,000 in commissions. Payment was made on the day of the sale.

By letter dated December 6, 1982 addressed to H&B, Kennedy stated: "As the primary broker in this transaction, LSR expects to be paid $35,000, per our contract." Kennedy explained: "LSR Corporation was the sole reason for the sale of the property. LSR brought the purchaser, helped to negotiate the purchase price, and also assisted the purchaser in negotiating financing for the property." H&B refused to pay, and LSR filed a motion for judgment claiming $35,000 in damages for breach of contract.

As an affirmative defense, H&B alleged that neither LSR, Brown, nor Kennedy, was "licensed either as a salesman or broker to sell real estate in Virginia." Reasserting that defense, H&B filed motions for summary judgment on the ground that "a prerequisite to entitlement to a real estate commission in Virginia is to be licensed as a real estate salesman or broker." The trial court overruled the motions, and the case was tried to a jury. The trial court overruled H&B's motion to strike LSR's evidence, the jury returned a verdict for LSR for the damages claimed, and the trial court entered judgment confirming the verdict. H&B assigned error to the several rulings, and we awarded H&B an appeal.

■ The statute in effect when this dispute occurred, former Code § 54-749 (Cum. Supp. 1984) (now § 54.1-2106), is central to the principal issue stated above. In pertinent part, that statute provided:

> It shall be unlawful for any person, partnership, association or corporation, to act as a real estate broker . . . without a license issued by the Virginia Real Estate Commission. No partnership, association or corporation shall be granted a license, unless every member or officer of such partnership, association or corporation, who actively participates in its brokerage business, shall hold a license as a real estate broker . . . .

The phrase "act as a real estate broker" was explicated in former Code § 54-732 (Cum. Supp. 1984) (now § 54.1-2107) as follows:

One act for a compensation or valuable consideration of buying or selling real estate of or for another, or offering for another to buy or sell or exchange real estate, or leasing, or renting, or offering to rent real estate except as specifically excepted in this chapter, shall constitute the person, firm, partnership, copartnership, association or corporation, performing, offering or attempting to perform any of the acts enumerated herein, a real estate broker or real estate salesperson within the meaning of this chapter.

As stated in Kennedy's letter of December 6, 1982 to H&B, LSR "was the sole reason for the sale", "brought the purchaser", "helped to negotiate the purchase price", and "assisted the purchaser in negotiating financing". On appeal, LSR does not deny that it acted as a real estate broker in Virginia, and it acknowledges that neither LSR nor any of its owners, officers, or agents was licensed in Virginia to engage in those acts. Those acts were "unlawful" under Code § 54-749 and punishable as "a Class 3 misdemeanor" under Code § 54-1.20(A)(4) (Repl. Vol. 1982) (now § 54.1-111(A)(4)). Yet, LSR claims compensation for performance of those acts and seeks to enforce its claim in an action for breach of contract.

"It is well established that, because a contract made in violation of the real estate licensing statutes is illegal, an unlicensed agent cannot recover compensation for his services in negotiating a sale under the contract." *Grenco* v. *Nathaniel Greene*, 218 Va. 228, 231, 237 S.E.2d 107, 109 (1977). *Grenco* cited *Massie* v. *Dudley*, 173 Va. 42, 3 S.E.2d 176 (1939), where this Court, construing predecessors of the current real estate licensing statutes, applied this rule to a compensation agreement between a landowner and a real estate broker whose license had expired. Refusing to enforce the agreement, we said:

We find nothing in the language of the statute . . . which indicates the slightest intention to treat the contract as valid and enforceable between the parties, and simply to provide for the exaction of a penalty. There is nothing by which we

can presume that it was intended that a violator should escape the ordinary consequences of his illegal acts.

The agreement upon which the plaintiffs in error rely is illegal, not merely invalid. It is void as being contrary to a positive statute and to public policy. Not merely the mode of its performance, but its substance is unlawful. The imposition of the penalty emphasizes the illegality.

*Id.* at 51, 3 S.E.2d at 180; quoted with approval, *State Realty Co. v. Wood*, 190 Va. 321, 324-25, 57 S.E.2d 102, 104 (1950).

Applying the *Massie* rule in *Hancock Company v. Stephens*, 177 Va. 349, 14 S.E.2d 332 (1941), we noted that "[a]lthough we recognize the apparent hardships sometimes resulting, we have consistently held that the courts will not aid a party to enforce an agreement made in furtherance of acts expressly made illegal by the statutes." *Id.* at 356, 14 S.E.2d at 334 (citations omitted).

All the contracts declared illegal and unenforceable in the real estate commission cases decided by this Court were contracts between broker and client. From the two letter opinions of record, it appears that the trial court concluded, and LSR agrees, that because the licensing statutes were designed to protect the public from incompetence and fraud practiced by unregulated persons, those statutes should be interpreted to apply always to contracts between broker and client but never to contracts between broker and broker such as the contract in issue.

We disagree. Read together, Code §§ 54-749, and -732 apply the licensing requirement to "any person" who engages in any "act for a compensation . . . of buying or selling real estate of or for another". If the General Assembly had intended to exempt brokers who enter into commission-sharing contracts, it could have added such an exemption to the list of exemptions detailed in Code § 54-734 (Repl. Vol. 1982) (now § 54.1-2103). It did not do so, and we will not presume that the omission was a legislative inadvertence. Rather, giving the statutory language its common import, we hold that the requirement that those who act as a real estate broker in Virginia be licensed in Virginia extends not only to those who enter into a compensation contract with a seller or a purchaser but also to those who contract with each other to share commissions earned by the performance of such acts.

■ Nevertheless, LSR contends that its commission-sharing contract with H&B was one expressly validated by a regulation promulgated pursuant to former Code § 54-740 (Cum. Supp. 1984) (now, § 54.1-2105) by the Virginia Real Estate Commission (now, the Virginia Real Estate Board). That regulation provided that

> referral fees and shared commissions may be paid to any real estate broker licensed in this or another jurisdiction, provided full disclosure of such payments are [sic] made to all principals to the transaction from which such fees derived.

§ 8.2(9), Regulations of the Virginia Real Estate Commission (1980) (now, § 3.5.2, Virginia Real Estate Board Licensing Regulations (1987)). In response, H&B contends that the administrative regulation is invalid as a contradiction of the legislative mandate.

In our view, the regulation lends itself to more than one interpretation. Construed narrowly, it applies only to commission-sharing agreements with real estate brokers licensed in sister states who perform no act in Virginia that would constitute an "act as real estate broker" within the definition of our licensing statutes. As thus construed, the regulation does not offend the statutes, and contracts between Virginia brokers and other licensed brokers concerning "referral fees and shared commissions" would be enforceable.

On the other hand, the regulation, construed broadly as LSR urges, would permit brokers licensed in other states to perform the same acts in Virginia as LSR's agents performed in this case and to be rewarded as they were in the lower court, all without need of proving themselves professionally qualified through the licensing procedure required of Virginia residents who undertake to act as real estate brokers for compensation or valuable consideration.**

■ To the extent the administrative regulation may be so interpreted, we hold that it is invalid as inconsistent with the plain language of the licensing statutes as we have construed them. Because the trial court's decisions overruling H&B's several motions

---

** LSR believes that the General Assembly, charged with knowledge of the regulation, has given it tacit approval by legislative inaction. If so, we think the legislature has construed the regulation narrowly.

were based upon an erroneous construction of the statutes, we will reverse the judgment and enter final judgment for H&B.

*Reversed and final judgment.*