UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-1454

JONES LANG LASALLE AMERICAS, INC., a Maryland corporation,

Plaintiff - Appellant,

v.

THE HOFFMAN FAMILY, LLC, a Virginia limited liability company; HOFFMAN BUILDINGS, L.P., a Virginia limited partnership,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony J. Trenga, District Judge. (1:13-cv-01011-AJT-JFA)

Argued: January 28, 2015                    Decided: April 8, 2015

Before SHEDD, DUNCAN, and KEENAN, Circuit Judges.

Reversed and remanded by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Shedd and Judge Keenan joined.

**ARGUED**: Stephen Michael Sayers, HUNTON & WILLIAMS LLP, McLean, Virginia, for Appellant. John Donley Adams, MCGUIREWOODS LLP, Richmond, Virginia, for Appellees. **ON BRIEF**: Thomas J. Cawley, Julie M. Peters, HUNTON & WILLIAMS LLP, McLean, Virginia, for Appellant. Jodie N. Herrmann, Charlotte, North Carolina, Brian D. Schmalzbach, MCGUIREWOODS LLP, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiff-Appellant Jones Lang LaSalle Americas, Inc. ("JLL"), appeals the district court's entry of summary judgment in favor of Defendants-Appellees The Hoffman Family, LLC, and Hoffman Buildings, L.P. (collectively, "Hoffman"), on JLL's breach of contract claim. JLL claims that Hoffman owes it $6.62 million in commission payments under a contract in which JLL agreed to help Hoffman secure a federal government lease in exchange for a percentage of the tenant's base rent. On appeal, JLL argues that the district court erred in concluding that a JLL employee involved in the leasing efforts was required to have a Virginia real estate salesperson's license, and that the consequence of the employee's failure to be so licensed was a total forfeiture of JLL's commission. For the reasons that follow, we reverse the district court's determination that, as a matter of law, JLL was precluded from recovering any commission under the lease agreement, and remand for further proceedings.

I.

A.

JLL is a real estate business that, at all times relevant here, had a firm license issued by the Virginia Real Estate Board. Hoffman owns tracts of real property in Alexandria, Virginia. In August 2007, Hoffman and JLL signed a leasing

3

agreement (the "Agreement"). In the Agreement, Hoffman retained JLL to act as the exclusive leasing agent for landholdings that included property located at 2401 Eisenhower Avenue, Alexandria, Virginia (the "Property"). Section 4.12 of the Agreement addressed JLL's services directed towards obtaining U.S. Government leases for Hoffman. This section required JLL to, inter alia, "[a]ssist with the development of an overall strategy for positioning the Property for site/building selection by the Government" and "[a]ssist in the negotiation of the [Government] lease award to [Hoffman]." J.A. 39. The Agreement also provided that, if JLL's efforts resulted in the lease of any of these properties, JLL would be entitled to a commission equal to 2% of the lease's base rent.

JLL assembled a Government Investor Services ("GIS") group to identify and pursue federal leasing opportunities for Hoffman. As a part of that effort, JLL hired Arthur M. Turowski after he retired from the U.S. General Services Administration ("GSA") in or around October 2007. J.A. 483-85. JLL hired Turowski to advise JLL's GIS team on matters related to the GSA and the federal lease procurement process. Turowski was not a licensed Virginia real estate salesperson when he joined the GIS team, and he did not obtain a salesperson's license while employed by JLL. J.A. 486-87.

4

On April 7, 2011, the GSA solicited Expressions of Interest ("EOI") for a lease for a site to house the new national headquarters of the National Science Foundation ("NSF"). JLL identified the Property as a candidate for the NSF lease and assisted Hoffman in presenting the Property to the GSA.

The GSA selected Hoffman for the award of the NSF lease on May 15, 2013. On May 23, 2013, Hoffman signed the NSF lease, and on June 7, 2013, the GSA delivered the signed NSF lease to Hoffman and issued a public announcement of the award. Hoffman will receive a total base rent of more than $330 million over the 15-year term of the NSF lease. J.A. 19.

B.

The parties began disagreeing over JLL's commission shortly after the NSF lease was signed. JLL claimed that, under the Agreement, Hoffman owed JLL a commission equal to 2% of the NSF lease's base rent, an amount totaling approximately $6.62 million. Hoffman asserted that it owed JLL a total commission of $1 million, based on what it claimed were oral agreements reflected in written submissions made to the GSA and elsewhere. The parties were unable to resolve this dispute, and JLL filed an action for breach of contract on August 16, 2013, seeking $6.62 million in commission payments. During the course of discovery, Hoffman learned that Turowski was not a licensed real estate salesperson.

Both parties moved for summary judgment. JLL claimed that it was entitled to recover the commission set forth in the Agreement because JLL procured the NSF lease and the Agreement was in effect during the course of JLL's leasing efforts. Hoffman argued in relevant part that, as a matter of public policy, JLL could not recover any commission that might have been payable under the Agreement because Turowski, an unlicensed real estate salesperson, was critical to JLL's NSF leasing efforts.

The district court granted Hoffman's motion for summary judgment. The court first concluded that Turowski was required to have a real estate salesperson's license because he was centrally involved in the activities that led to Hoffman's successful bid for the NSF lease. As to the consequences of that requirement, the district court concluded "based on public policy declared by the Virginia courts" that "Turowski's failure to have a license preclude[d] JLL[], as well as Turowski, from receiving any commission with respect to the NSF lease." J.A. 193. JLL timely appealed.

II.

We review de novo a district court's grant of a motion for summary judgment, construing all facts and making all reasonable inferences in favor of the non-moving party. Millennium

6

Inorganic Chems. Ltd. v. Nat'l Union Fire Ins. Co., 744 F.3d 279, 285 (4th Cir. 2014). Summary judgment is appropriate only when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

JLL argues on appeal that the district court erred in concluding that Turowski's participation in the NSF leasing efforts rendered the Agreement unenforceable on public policy grounds, and consequently, in determining that JLL was prohibited from receiving any commission payable under the Agreement as a matter of law. We agree.

Neither JLL nor Hoffman dispute that the Agreement was valid when formed. Instead, Hoffman contends that JLL performed its contractual obligations in contravention of the Virginia real estate licensing scheme--and therefore rendered the Agreement unenforceable--when Turowski, who did not have a salesperson's license, became involved with the transaction.[1] We find this argument unpersuasive because it is unsupported in

---

[1] Hoffman so argues because it submits that "Turowski's extensive participation in the NSF lease transaction rendered him a 'real estate salesperson' in Virginia," and therefore required him to be licensed as such. Appellee's Br. at 17.

7

Virginia law. As an initial matter, the district court imposed a total forfeiture of JLL's commission "based on public policy declared by the Virginia courts" despite the fact that "[t]here is no explicit statute or judicial decision that [would] impose[] [a total prohibition of JLL's commission] under Virginia law." J.A. 193. Likewise, Hoffman can point to no authority under Virginia law that would compel a forfeiture of JLL's commission under the circumstances presented here. Absent Virginia cases addressing this issue, we decline to speculate whether Virginia courts would so hold.

While the Supreme Court of Virginia has not addressed the enforceability of validly formed contracts performed contrary to Virginia's real estate licensing scheme, Virginia law is clear on two points. First, "a contract <u>made</u> in violation of the real estate licensing statutes is illegal" and unenforceable.[2] <u>Grenco</u>

---

[2] The Supreme Court of Virginia first addressed the issue of commission payments to unlicensed brokers and salespersons in <u>Massie v. Dudley</u>, refusing to enforce an agreement "made by an unlicensed person" because "its substance [was] unlawful." 3 S.E.2d 176, 180-81 (Va. 1939). The court has consistently reiterated this principle following <u>Massie</u>. In <u>Harrison & Bates, Inc., v. LSR Corp.</u>, for example, the court held unenforceable a contract to split commissions made between a licensed corporation and an unlicensed firm. 385 S.E.2d 624 (Va. 1989); <u>see also</u> <u>Hancock, Co. v. Stephens</u>, 14 S.E.2d 332, 334 (Va. 1941) (holding unenforceable a contract for real estate commissions formed by an unlicensed corporation); <u>State Realty Co. v. Wood</u>, 57 S.E.2d 102 (Va. 1950) (holding unenforceable a real estate contract that provided for the payment of brokerage fees to an unlicensed corporation).

8

_Real Estate Inv. Trust v. Nathaniel Greene Dev. Corp._, 237 S.E.2d 107, 109 (Va. 1977) (emphasis added). And second, Virginia "courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain." _Wallihan v. Hughes_, 82 S.E.2d 553, 558 (Va. 1954). On this latter point, the Supreme Court of Virginia has reasoned that, though "[p]ublic policy has its place in the law of contracts, . . . that will-o'-the-wisp of the law varies and changes with the interests, habits, need, sentiments and fashions of the day," _id._, and courts are thus wary of employing it to invalidate contracts that were valid when formed. In the absence of clear Virginia law standing for the proposition that a validly formed contract for real estate commissions can later become unenforceable through unlawful performance, we decline to hold the validly formed Agreement unenforceable as a matter of law on the grounds of public policy.[3]

---

[3] In light of this determination, and because the parties agree that Turowski's involvement in the NSF leasing efforts began over a month after the Agreement's valid formation, we need not decide whether Turowski was required to have a salesperson's license. Moreover, Virginia's General Assembly has delegated the authority to regulate the real estate profession to the Virginia Real Estate Board. _See_ Va. Code Ann. § 54.1-2105. Pursuant to this authority, the Board is empowered to police unlicensed real estate activity by, inter alia, issuing cease and desist orders and imposing civil penalties. _Id._ § 54.1-2105.2(A), (C). Thus, if Turowski was required to have a salesperson's license in order to participate in JLL's (continued)

9

To be clear, our conclusion does not purport to decide whether JLL is entitled to the $6.62 million in commission payments it seeks. We hold only that Turowski's participation in the NSF leasing efforts did not render the Agreement unenforceable as a matter of public policy. With this question of law resolved, we return the matter to the district court to resolve the legal and factual issues that remain in dispute, including whether "the parties agreed to a $1 million commission with respect to the NSF lease" in an oral agreement. J.A. 178 n.3.

IV.

For the foregoing reasons, the judgment of the district court is reversed and this matter is remanded to the district court.

REVERSED AND REMANDED

---

NSF leasing efforts, it is within the Board's discretion to determine the consequences of that unlicensed activity.