**Salem**

VIRGINIA REAL ESTATE BOARD

v.

LOWELL D. CLAY

No. 0837-88-3

Decided September 26, 1989

COUNSEL

Richard B. Zorn, Senior Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

Alan D. Groseclose, for appellee.

OPINION

**COLEMAN, J.**—The Virginia Real Estate Board (Board), pursuant to its disciplinary regulation 8.2(36),[1] suspended for one year the real estate broker's license of Lowell D. Clay and fined him $1,000 for withholding from a prospective purchaser the fact that an oil and gas lease encumbered his fifty-two acres of Pulaski County mountain land. Clay appealed the administrative ruling to the Circuit Court of Pulaski County. The court found that Clay did not knowingly and intentionally withhold information from the purchaser about the lease on his property, but rather inadvertently failed to disclose the information. Moreover, the court held that because Clay was selling his own property, Code § 54-734(1)[2] exempted him from control by the Board because its regulations ap-

---

[1]   Regulation 8.2 states:

Grounds for disciplinary action, or denial of renewal.—The Commission has the power to fine, suspend, revoke or fail to renew any license issued under the provisions of Chapter 18, Title 54, and the Regulations of the Commission, at any time after hearing when the licensee has been found to be guilty of:

* * *

(36) Withholding from a prospective purchaser or seller any information readily available to such licensee concerning character or condition of the real estate, location, acreage, boundaries, loan charges, loan discount, highway location or relocation, zoning restrictions, proposed zoning changes, existence and availability of public utilities and sewer connections, taxes, and approximate closing costs.

* * *

If the Commission shall determine that any licensee is guilty of a violation of any of the provisions of Chapter 18, Title 54, or regulations of the Commission, his or her or its license is subject to fine, suspension, revocation, or denial of renewal.

Regulation 8.2(36) was amended in 1984 and 1987, and redesignated as regulation 15, which states:

Failing to disclose in a timely manner to a prospective purchaser/lessee or seller/lessor, any material information related to the property reasonably available to the licensee or registrant.

[2]   The provisions of this chapter shall not apply to:

1.   Any person, partnership, association or corporation, who as owner or lessor shall perform any of the acts aforesaid with reference to property owned or leased by them, or to the regular employees thereof, with respect to the property so owned

ply only when one acts as an agent or broker. The Board appealed pursuant to Code § 17-116.05(1), seeking to have its administrative decision upheld.

Lowell D. Clay is a licensed real estate broker regularly conducting business in Pulaski County. In 1971, Clay acquired fifty-two acres of mountain land in Pulaski County. In 1982, he leased to Royal Resources Corporation the oil and gas rights in the property for ten years, subject to renewal for an indefinite term if the lessee maintained producing wells. The lease also granted exploration rights upon the property. In 1983, Elizabeth Southcott telephoned Clay about purchasing the fifty-two acres of mountain land, which once belonged to her family. Southcott offered him $16,500 for the property, which Clay accepted. Clay prepared a contract of sale dated October 13, 1983, on a standard form printed by the Virginia Association of Realtors in which Clay provided that the sale was "subject to [the buyer obtaining] financing" and that the "buyer understands that seller is a real estate agent." Neither the contract nor any other document from Clay disclosed to Southcott the existence or terms of the oil and gas lease. Southcott and Clay signed the contract, at which time she paid him $100 earnest money.

Southcott testified that she first learned of the lease encumbering the property from the attorney she retained to examine the title. After learning of the lease, Southcott informed Clay by letter that she considered the lease to affect adversely the property's value and that she was, as a result, willing to pay only $10,000 for the property. Clay considered her response as a counteroffer, which he rejected. He treated the counteroffer as a repudiation of the original contract and refunded Southcott's $100. Clay sold the property to another purchaser for $16,500.

Clay testified that he simply overlooked the existence of the lease and failed to inform Southcott of it because he had forgotten about it. He stated that his omission was inadvertent, not willful. Contrary to Southcott's testimony, Clay stated that shortly after

or leased, where such acts are performed in the regular course of, or as and incident to, the management of such property and the investment therein . . . .

Chapter 18, Title 54 was substantially amended and recodified in 1988 at Chapter 21, Title 54.1. *See* Code § 54.1-2100 *et seq.* However, for this opinion references will be to Title 54 under which the case arose.

the contract was signed he realized the oversight, informed Southcott and her attorney of the existence of the lease, and informed them that he considered the lease to be invalid because the lessee had not paid annual rent for two years. Clay testified that in an effort to rectify the situation he attempted to cancel the lease to satisfy Southcott's objection, but that the lease required notice to terminate for nonpayment and the lessee exercised its right to keep the lease in effect by paying the delinquent rental.

Southcott, disappointed with losing the property, filed a complaint with the Virginia Real Estate Board. The Board found that Clay had violated Regulation 8.2(36) by withholding from Southcott, a prospective purchaser, information readily available to him concerning the character and condition of the real estate he was selling. Implicitly, the Board held that its regulation imposed an absolute duty to disclose to a prospective purchaser all known information concerning the character or condition of the real estate. Under the Board's interpretation of its regulation, the fact that the withholding of available information was inadvert is no defense but would affect the penalty to be imposed. The Board imposed a license suspension and fine sanctions for Clay's violation. On appeal, the circuit court reversed.

## I.

We first address the Board's contention that the trial court erred in concluding that the "owner" exemption in Code § 54-734(1) precludes it from regulating a licensed real estate broker when he sells his own property. The Board contends that the General Assembly created an "owner" exemption in Code § 54-734(1) only to exclude property owners from the licensing requirement when selling their property. According to the Board, the General Assembly did not intend to exempt licensed brokers from the regulations where the broker is dealing with his or her own property. In other words, the Board contends that the exemption designates those who must be licensed, not whether a licensee is subject to the Board's regulations when selling his or her own property. Considering the legislative purpose of Chapter 18, Title 54 and the relevant statutes, we agree with the Board's position.

The controlling statutory provision is Code § 54-734(1), which provided that this chapter shall not apply to:

Any person, partnership, association or corporation, who as owner or lessor shall perform any of the acts aforesaid with reference to property owned or leased by them, or to the regular employees thereof, with respect to the property so owned or leased, where such acts are performed in the regular course of, or as an incident to, the management of such property and the investment therein.

Read out of context, the statute appears to exempt a licensed broker from regulation by the Board in transactions involving his or her own property. But a fundamental rule of statutory construction requires that courts view the entire body of legislation and the statutory scheme to determine the "true intention of each part." *McDaniel v. Commonwealth*, 199 Va. 287, 292, 99 S.E.2d 623, 627 (1957). In construing statutes, courts should give the fullest possible effect to the legislative intent embodied in the entire statutory enactment. *Board of Supervisors, King & Queen County v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989); *Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983).

■ The purpose of Chapter 18 of Title 54, the real estate licensing statutes, was "to protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons." *Grenco v. Nathaniel Green Dev. Corp.*, 218 Va. 228, 231, 237 S.E.2d 107, 109 (1977) (quoting *Massie v. Dudley*, 173 Va. 42, 55, 3 S.E.2d 176, 181 (1939)). To effectuate that purpose, the General Assembly made it unlawful under Code § 54-749 for anyone to act as a real estate agent without a license. Thus, the General Assembly gave to those licensed by the Board the exclusive privilege of engaging in the sale or brokering of real estate for others. *See Commonwealth v. Shell Oil Co.*, 210 Va. 163, 166, 169 S.E.2d 434, 437 (1969). The General Assembly also imposed upon the Board, under Code § 54-740, the responsibility of maintaining ethical and competency standards for licensed real estate agents and brokers. Therefore, Code § 54-734(1) must be construed in a manner consistent with the purpose of the licensing requirements—maintaining ethical and competency standards of licensed real estate agents and brokers.

If Code § 54-734(1) were construed to exempt real estate brokers from the Board's regulation in transactions involving their

own property, the Board would be precluded from maintaining the integrity of their licensees in such transactions. Such an interpretation would be inconsistent with the overall statutory licensing provisions.

> [T]here can be no justification of an interpretation of the licensing act which would allow a broker to be honest as a broker and dishonest as a property owner. A broker who is dishonest or incompetent in the real estate activities in which he is involved as owner, is not likely to be honest or competent in his activities which are purely brokerage in nature. The purpose of real estate licensure is to bar the dishonest or incompetent from entry into this occupation.

*Real Estate Comm'n v. Tice*, 200 Pa. Super. 553, 559, 190 A.2d 188, 190-91 (1963). Therefore, we find that the trial court erred in concluding that Code § 54-734(1) exempted Clay from the Board's regulations when he sold his own property. To accept Clay's argument would undermine the Board's power to protect the public from deceptive practices by real estate agents or brokers, by encouraging agents or brokers to sell their client's realty through their own account. Such an interpretation would hamper the Board's ability to carry out its statutory purpose of maintaining the integrity and competence of the profession. *See Black v. Real Estate Comm'n*, 275 Ark. 55, 626 S.W.2d 954 (1982); *Wright v. Real Estate Comm'n*, 208 Neb. 467, 304 N.W.2d 39 (1981); *Tice*, 200 Pa. Super. 553, 190 A.2d 188 (1963). *See generally* Annot., 22 A.L.R.4th 136, 152-58 (1983) (discussing the revocation or suspension of real estate license for conduct involving sale of a broker's own property).

■ Code § 54-734(1) merely exempted from the licensing requirement property owners who in the course of dealing with their own property perform acts customarily performed by licensed agents or brokers. However, once an individual is licensed as an agent or broker, that person is subject to regulation by the Board in any real estate transaction in which he or she participates.

■ Code § 54-740 gave the Board broad authority to promulgate rules and regulations that it finds necessary to implement its statutory purpose. The Board has broad discretion to decide how to regulate its licensees including whether to regulate transactions involving their own real estate. The Board determined to regulate

the agents and brokers who sell their own real estate when it promulgated Regulation 8.6 which states:

> Brokers and Salesmen dealing on own account.—If any licensee fails to comply with the provisions of Chapter 18, Title 54, Code of Virginia, 1950, as amended, and/or the Regulations of the Virginia Real Estate Commission in performing any acts covered by the Virginia Code §§ 54-730 and 54-731, regardless of whether such acts are for his or her own account or in his or her capacity as a real estate broker or real estate salesman, he or she shall be deemed guilty of improper dealings.

Therefore, the trial court erred in finding that Code § 54-734(1) exempted Clay from the Board's regulation.

## II.

■ The Board next contends that the trial court erred by reversing the Board's construction of its own Regulation 8.2(36) and holding that an intentional or willful withholding of information is required to violate the regulation. Further, the Board contends that the court erred in finding that the record lacked substantial evidence establishing Clay's violation. Clay also questions by cross-error the Board's authority to promulgate a regulation which requires a real estate agent or broker to disclose to a purchaser information which might be adverse to the agent's or broker's principal. Regulation 8.2(36) stated that the Commission had the power to fine and suspend the license for:

> Withholding from a prospective purchaser or seller any information readily available to such licensee concerning character or condition of the real estate, location, acreage, boundaries, loan charges, loan discount, highway location or relocation, zoning restrictions, proposed zoning changes, existence and availability of public utilities and sewer connections, taxes, and approximate closing costs.

We find that Regulation 8.2(36) was a valid exercise of the Board's authority, that the interpretation which an administrative agency gives its regulation must be accorded great deference and will not be set aside unless arbitrary and capricious, and that the

Board committed no error of law in its application of its regulation against Clay.

At the outset, we find no merit in Clay's contention that Regulation 8.2(36) constituted an invalid exercise of the Board's authority to regulate real estate brokers. Code § 54-740 gave the Board broad discretion in promulgating rules and regulations necessary to carry out its statutory purpose of maintaining integrity and competency of real estate brokers. *See Grenco*, 218 Va. at 231, 237 S.E.2d at 109. To do so, the Board was required not only to protect the relationship between a broker and his or her principal but also to protect purchasers who deal with licensed agents and brokers. The Board promulgated regulations designed to enhance the public's trust in licensed agents and brokers. Regulation 8.2(36), requiring the broker to disclose to prospective purchasers information which is readily available to the broker that affects the character or condition of the property falls within the broad statutory authority delegated to the Board. The regulation served the statutory purpose of full disclosure when dealing with the public. Thus, Regulation 8.2(36) was a proper exercise of the Board's authority to regulate its licensed brokers. *See Johnston-Willis Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

### III.

The trial court found that the Board erred by construing Regulation 8.2(36) to mean that an "inadvertent failure to list in the contract of sale every element affecting title" would constitute a violation. Instead, the trial court ruled that to prove a violation of the regulation the Board had to show a "willful" or "wrongful effort" to withhold information by the licensee.

The construction which an administrative agency gives to its regulation, if reasonable, is entitled to great deference. We find that the trial court erred in its interpretation of Regulation 8.2(36) by substituting its construction of the regulation for the Board's reasonable interpretation. The trial court erred by failing to defer to the experience and specialized competence of the Board in interpreting the regulation which it promulgated.

■ Code § 9-6.14:17 requires that reviewing courts "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the

basic law under which the agency has acted." A court must give "special" weight to the interpretation of an agency's regulation which falls within the specialized competency and the area of discretion entrusted to the agency by the General Assembly. *Johnston-Willis*, 6 Va. App. at 244, 369 S.E.2d at 8.

The rationale of the statutory scheme is that the [administrative agency] shall apply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function.

*Virginia ABC Comm'n v. York St. Inn, Inc.*, 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979) (quoting *Schmidt v. Board of Adjustment*, 9 N.J. 405, 423, 88 A.2d 607, 615-16 (1952)). The trial courts may reverse the administrative agency's interpretation only if the agency's construction of its regulation is arbitrary or capricious or fails to fulfill the agency's purpose as defined by its basic law. *Johnston-Willis*, 6 Va. App. at 246, 369 S.E.2d at 9.

The Board applied Regulation 8.2(36) in a manner promoting the Board's mandate to maintain the integrity and competency of licensees. The Board's interpretation of its regulation was entitled to "special weight." While the Board made no finding that Clay deliberately or intentionally withheld from Southcott the existence and provisions of the oil and gas lease, clearly Clay did not disclose information which was "readily available to him." The Board did not require proof of intent by Clay to harm or defraud Southcott. The Board held, in effect, that the failure to disclose information readily available to an agent or broker was in violation of the Regulation when it concerned the property in the manner specified. A licensee who negligently or inadvertently withheld readily available information equally failed to fulfill the purpose of the regulation as would one who purposefully withheld the information. The Board's interpretation was consistent with its statutory mandate to maintain professional standards of integrity and honesty of licensed real estate brokers and to insure that licensees conduct business competently when dealing with the public.

While the Board did not define "readily available information," it found on these facts that the existence of an oil and gas lease negotiated and signed by the licensee, Clay, was "readily available" information. The Board did not find that "readily available information" provision required licensees to disclose "every element effecting title." The Board's application of Regulation 8.2(36) to Clay was not arbitrary or capricious under the facts.

## IV.

■ Finally, we determine whether under Code § 9.6.14:17 substantial evidence existed to support the Board's finding that Clay violated Regulation 8.2(36). *Johnston-Willis*, 6 Va. App. at 262, 369 S.E.2d at 18. "Under this standard . . . the [reviewing] court may reject the agency's finding of fact 'only if considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.' " *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983); *see also Johnston-Willis*, 6 Va. App. at 241, 369 S.E.2d at 18; *Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987). The evidence established that Clay withheld from the prospective purchaser information available to Clay about the existence of the oil and gas lease. Prior to executing the contract, he did not disclose the existence of the lease. Substantial evidence exists in the record to establish that Clay withheld from a perspective purchaser readily available information about the existence of an oil and gas lease and exploration rights which encumbered the real estate offered for sale.

For the foregoing reasons, the judgment of the trial court is reversed and the order of the Virginia Real Estate Board is reinstated.

*Reversed and final judgment.*

Benton, J., and Duff, J., concurred.