## CIRCUIT COURT OF THE CITY OF RICHMOND

BIT Processing, Inc.

v.

Information Technology
Procurement Appeals Board et al.

June 10, 1994

Case No. HE-424-3

BY JUDGE T. J. MARKOW

Before the Court is a challenge by BIT Processing, Inc., of a decision by the Information Technology Procurement Appeals Board which may have the effect of reopening bidding on a contract awarded to BIT by the University of Virginia. BIT argues that the protest of the award by another company, CBM Computer Center which ultimately led to the Board's decision was not timely filed and, therefore, should not have been considered. BIT asks the Court to void the Board's decision and enjoin the University from reopening bidding on the contract.

For the reasons set forth below, the Court rules that the protest was filed in accordance with state law and agency regulations and that consideration of the protest by the Board was appropriate. Accordingly, injunctive relief will be denied.

Pursuant to the provisions of the Virginia Public Procurement Act, Va. Code Ann. §§ 11-35 through 11-80, the University of Virginia sought bids in August, 1993, from companies interested in providing computer hardware to the University. Bids were received from both BIT and CBM and, on December 16, 1993, a contract was awarded to BIT. CBM, by letter of January 3, 1994, protested this award, a protest which was overruled by the University on January 13, 1993. CBM's basic complaint was that the University, in comparing bids, had considered cost discounting factors which its own rules apparently stated would not be considered. On appeal,

the Board found merit in CBM's complaint and reversed the University's rejection of the protest as arbitrary and capricious. BIT points out that state law requires that protests be filed within ten days of an award, Va. Code Ann. § 11-66(A) (1993), and argues that since CBM's protest was filed eighteen days after the award, neither the University nor the Board should have considered the protest.

An initial issue raised by the Board is whether this Court has jurisdiction to entertain a complaint of this nature against a state agency. This Court has jurisdiction. At bottom, this is a contract dispute. BIT was awarded a contract by the University of Virginia and now challenges a decision by the Board intended to reopen bidding on that contract. Section 11-70(E) of the Virginia Code specifically allows a "contractor [to] bring an action involving a contract dispute with a public body in the appropriate circuit court." *Id.* § 11-70(E). Under § 11-69, BIT was required to submit its contract claim in writing, *see id.* § 11-66(A), something it did on March 25, 1994, one day after the Board issued its decision.

The Board argues that § 11-66(A) requires specific notice of an intent to file suit. However, the statute actually operates to allow a state entity to settle contract claims prior to litigation. *See id.* § 11-66(C) ("A contractor may not . . . institute legal action as provided in § 11-70, prior to receipt of the public body's decision on the claim . . . ."). Accordingly, it appears that adequate notice was provided by BIT of its claim and that this Court has jurisdiction to consider the contract dispute.

BIT's primary argument is that CBM's protest should not have been considered since it was received more than ten days after the University awarded the contract to BIT. However, agency regulations, as reflected in the Commonwealth of Virginia's Vendor's Manual further clarify the ten day rule. "The written protest must be received in the purchasing office not later than 5:00 p.m. on the tenth day. *If the tenth day falls on a weekend or an official State holiday, the ten-day period expires at 5:00 p.m. on the next regular work day.*" *Department of General Services Vendor's Manual* § 6.6 (1990) (hereinafter *Vendor's Manual*) (reflecting agency regulations) (emphasis added). Since the award decision was rendered on December 16, 1993, any protest would normally have been due by December 26, 1993, a Sunday. Because the University closes on a somewhat different holiday schedule than most other state agencies and, accordingly, was closed between Christmas and New Year's Day, the first working day after December 26, 1993, was January 3, 1994, the day CBM's protest was filed.

BIT objects to the regulation regarding holidays arguing, in essence, that it effectively extends the permissible protest period beyond the ten days allowed by § 11-66(A). However, state agencies are given broad discretion to promulgate regulations consistent with their delegated authority and purpose.

In *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 384 S.E.2d 622 (1989), the Virginia Court of Appeals acknowledged that a literal reading of state law might indicate that real estate brokers were exempt from state regulation when selling their own property but ruled that a regulation of the Virginia Real Estate Board which applied regulations to brokers selling their own property was consistent with the Board's "statutory purpose of maintaining the integrity and competence of the profession." *Id.* at 158, 384 S.E.2d at 626.

There would not appear to be any reason to presume that the Division of Purchasing and Supplies is not given similar broad discretion in carrying out the legislature's intent that state purchases be handled in a fair and fiscally sound manner.

> To the end that public bodies in the Commonwealth obtain high quality goods and services at reasonable cost, that all procurement procedures be conducted in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety, that all qualified vendors have access to public business and that no offeror be arbitrarily or capriciously excluded, it is the intent of the General Assembly that competition be sought to the maximum feasible degree [and] that individual public bodies enjoy broad flexibility in fashioning details of such competition . . . .

Va. Code Ann. § 11-35(G); *see also id.* § 2.1-442 (1987) ("All purchases made by any department, division, officer or agency of the Commonwealth shall be made in accordance with Chapter 7 (§ 11-35 et seq.) of Title 11 *and such rules and regulations as the Division [of Purchases and Supplies] may prescribe.*") (emphasis added). To argue, as BIT does, that a regulation which takes into account the effect of office closings on state holidays in applying the statutory ten day limit for filing protests is to place literal language ahead of legislative purpose. Allowing protests to be filed on the first available work day when the tenth day falls on a holiday or weekend clearly is compatible with the statute and is not simply, as BIT suggests, an arbitrary regulation which extends the protest window beyond that permitted by statute.

However, perhaps of greater concern is the interpretation of the phrase "official State holiday" used in the protest regulation. BIT argues that the language refers only to the official holidays set forth in the Virginia Code. *See* Va. Code Ann. § 2.1-21 (Supp. 1993). The University, presumably because of academic realities, operates under a holiday schedule different from that set forth in the statute. As noted earlier, the University was officially closed between Christmas and New Year's Day. Although certainly BIT is correct in arguing that these holidays are not official holidays set forth in § 2.1-121, there was, nonetheless, no reasonable method for CBM to file its protest any earlier than January 3, 1994, the first working day after December 26, 1993, the Sunday on which the protest would otherwise have been due.

Although the timeliness issue raised by BIT was not specifically addressed by the Board, the timing facts were recited and, in the Board's silence, there is implicit acceptance of the timeliness of the protest. To the extent that this also implies that "official holidays" is interpreted by reference to those holidays observed by particular state entities, this is a reasonable interpretation of the ten day regulation. "[T]rial courts may reverse the administrative agency's interpretation only if the agency's construction of its regulation is arbitrary and capricious or fails to fulfill the agency's purpose as defined by its basic law." *Virginia Real Estate Bd. v. Clay*, 9 Va. App. at 161, 384 S.E.2d at 627.

Accordingly, BIT's argument that the University and, subsequently, the Board erred in considering CBM's protest lacks merit. The Board was within its authority in ruling that the University's rejection of CBM's protest was arbitrary and capricious. *See* Va. Code Ann. § 11-66(B); *Vendor's Manual* § 10.7.

Since the Board was under the impression that performance had not yet started, *see Decision of The Information Technology Appeals Bd.* at 5 (March 24, 1994) (hereinafter *Board Decision*), the Board could have specifically enjoined performance, effectively canceling the contract. *See* Va. Code Ann. § 11-66(B); *Vendor's Manual* § 10.7(b). However, it is not clear from the record that its ruling went that far. "It is the opinion of the Board, subject to 10.7(b) of the Vendor's Manual, that this contract should be rebid." *Board Decision* at 5. Such language almost reads as a recommendation, something which would be more compatible with a presumption that performance of the contract had started. "Where the award of the contract has been made and performance has begun, *the procuring agency, not the Board*, may elect to terminate the contract if it finds that this action

is in the best interests of the public." *Vendor's Manual* § 10.7(c) (emphasis added); *see also* Va. Code Ann. § 11-66(B).

Therefore, if performance had begun, as it apparently had, authority to void the contract rests with the University, *see id.* § 10.7(c), which has apparently not yet exercised the authority. Because the Court has found that the actions taken by the Board and the University are in accordance with state law, the Court will not enjoin the University from exercising this authority if it chooses to do so.

## ORDER

On this day came the parties, by counsel, on the Motion for Temporary or Preliminary Injunction, and evidence was presented and argument was heard. For the reasons set forth in the court's letter opinion to counsel, the court rules that the procedures followed by the Board and the University were in accord with state law and agency regulations. It is, therefor, ordered that the Motion for Temporary or Preliminary Injunction is denied. The plaintiff's objections are noted.