455 S.E.2d 287

**Patrick G. CARPENTER**

v.

**VIRGINIA REAL ESTATE BOARD.**

**Record No. 0456–94–4.**

Court of Appeals of Virginia,
Alexandria.

March 28, 1995.

John A. Gibney, Jr., Richmond (Shuford, Rubin & Gibney, P.C., on briefs), for appellant.

Richard B. Zorn, Sr. Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: BARROW and KOONTZ, JJ., and DUFF, Senior Judge.

KOONTZ, Judge.

Patrick G. Carpenter (Carpenter) appeals a decision of the Circuit Court of Shenandoah County affirming the revocation of his real estate broker's license by the Virginia Real Estate Board (board). Carpenter contends *inter alia* that (1) the evidence was insufficient to show that he was ineligible for reciprocity licensure and thus obtained his broker's license by fraud; (2) the board lacked the power to revoke his license for that cause; and (3) the board should have recused itself from making the final determination on the complaint filed against him because it previously had ruled against him in its preliminary informal proceedings. For the following reasons, we affirm the decision of the circuit court.

Carpenter was licensed as a realtor in California beginning in 1977. He was licensed as a broker in that state in 1980. On June 25, 1984, Carpenter's broker's license expired but was renewed on May 6, 1986 under a grace period provision. During the time that his license was expired and for some time thereafter, Carpenter worked for limited partnerships involved in the purchase and liquidation of real estate through

**104**

bankruptcy trustees. An attorney with whom Carpenter worked during this period conceded that Carpenter did not operate as a broker for third party transactions or as a sales agent for principals. The attorney asserted, however, that Carpenter "nevertheless[ ] practice[d] real estate in California *for which he did not require a license.*" (Emphasis added.)

On March 17, 1989, Carpenter applied for a broker's license in Virginia under reciprocity rules permitting a broker licensed in another state to receive a license in Virginia under certain conditions. Carpenter had previously met with a licensing administrator to discuss his application. Although the licensing administrator could not recall the specific conversation he had with Carpenter, the administrator stated that he was required to inform Carpenter of the requirements for reciprocity, including the requirement Carpenter had "been actively engaged in real estate for at least 20 hours per week for at least 36 of the last 48 months."

Carpenter supplied the board with a completed application and supporting materials, including two affidavits from California businessmen stating that Carpenter had been "actively engaged in the practice of real estate for the past twelve years, and specifically for the last four years." One of the affiants later disclaimed his signature on the affidavit, stating that he did not sign the affidavit and that he had provided Carpenter with blank stationery. He further asserted, however, that he had "discussed the subject matter with [Carpenter] and the contents [of the affidavit were] the truth."

Upon receipt of these documents, the board contacted the California real estate authority and confirmed that Carpenter had a valid California broker's license. The board then issued Carpenter a broker's license on March 30, 1989 based upon the information provided in his application. That license was renewed two years later through the usual board procedures.

Sometime in 1991, the board received a complaint against Carpenter, alleging that he was ineligible to receive a broker's license under reciprocity. The complainant alleged that during the forty-eight month period prior to filing his application

Carpenter had not been licensed for the full period in California and that he had not been otherwise involved in the practice of real estate.

The board initiated an informal investigation of the complaint before Commissioner Cynthia Marshall on October 23, 1991. At that hearing, Carpenter conceded that during the applicable period he did not work "as a broker. I was doing it as an owner or as a consultant for the bankruptcy courts." He further testified that he had contacted the California Department of Real Estate and had been informed that he did not need a license to conduct such activities so long as he collected no sales commissions. He maintained that he had "answered all of the questions [on the application] to the best of [his] ability." On January 16, 1992, the board voted to require Carpenter to relinquish his license or proceed with a formal hearing.

Carpenter responded to the board's action with a settlement offer, which is not included in the record, but refused to surrender his license. The settlement offer was rejected by the board on March 19, 1992. Carpenter again offered a settlement after obtaining a continuance in the hearing, and the board again rejected his offer on June 5, 1992. The matter then proceeded to a formal hearing before Hearing Officer William M. Marshall on July 7, 1992.

At the hearing, Carpenter testified that the affiant who disclaimed his signature on one affidavit submitted to the board drank heavily and was mistaken about certain elements in his disclaimer. Carpenter further testified that he was "confused about some things" that were required for reciprocity and that he "ran into some definition problems" but "submitted the application in good faith." Carpenter argued that his oath on the application applied only to the information in the application and not to the supporting material. As the application contained no specifics regarding his qualifications, he asserted that he could not be said to have defrauded the board through the statements on the application form.

Following the hearing officer's submission of proposed findings and conclusions to the board, Carpenter requested that the board recuse itself on the ground that it had already reached a determination in the informal proceeding and thus was biased against him. The board denied Carpenter's request and proceeded to adopt the hearing officer's recommendation that Carpenter's license be suspended and that he be fined $1,000 and costs. Carpenter appealed to the Circuit Court of Shenandoah County, asserting the same issues he now raises in this Court. The trial court upheld the board, finding the contentions without merit.

We first consider Carpenter's assertion that he could not be guilty of fraud because he was in fact eligible to receive a real estate broker's license by reciprocity. The board, like all administrative agencies, is a creature of statute and derives its power only from its authorizing legislation. Pursuant to Title 54.1, Chapter 21 of the Code of Virginia and its predecessor statute, the board has the responsibility of maintaining ethical and competency standards for licensed real estate agents and brokers. The mandate of the Code must be construed in a manner consistent with this purpose. *Real Estate Board v. Clay*, 9 Va.App. 152, 157, 384 S.E.2d 622, 625 (1989) (construing similar provisions of former Title 54), *appeal dismissed*, 398 S.E.2d 78 (1990).

The board is given broad authority to promulgate rules and regulations that it finds necessary to implement its statutory purpose and has broad discretion to decide how to regulate its licensees. *Id.* at 158, 384 S.E.2d at 626. The board is given specific authority to grant realtor licenses by reciprocity, Code § 54.1–103(C), and has a general mandate to "do all things necessary and convenient for carrying out the provisions of [Title 54, Chapter 21] [by] promulgat[ing] necessary regulations." Code § 54.1–2105.

Carpenter admitted at the hearing that he was aware of the requirements for reciprocity licensure when he submitted his application and supporting materials. Moreover, by signing his application, Carpenter asserted that he had read and

understood the applicable law and regulations. Virginia Real Estate Board Regulations § 2.3(A)(3)(1987) [hereinafter VREBR]. Those regulations define eligibility for reciprocity licensure as a broker as follows:

[The applicant shall] [h]ave been licensed as a real estate broker and actively engaged as a real estate broker or salesperson in the current jurisdiction of licensure for at least 36 of the 48 months immediately prior to making application in Virginia.

VREBR § 2.3(B)(1). The regulations further provide that "actively engaged" means performing those activities defined in former Code § 54–731 for an average of twenty hours per week. VREBR § 1.1.

Former Code § 54–731, as in effect at the time of Carpenter's application, defined the activities of a real estate salesperson as follows:

any person who for a compensation or valuable consideration is employed either directly or indirectly by, or affiliated as an independent contractor with, a real estate broker, to sell or offer to sell, or to buy or offer to buy, or to negotiate the purchase, sale or exchange of real estate, or to lease, rent or offer for rent any real estate, or to negotiate leases thereof, or of the improvements thereon or acts as a rental location agent ... as a whole or partial vocation.

■ The record of this case clearly and irrefutably establishes that Carpenter was not licensed as a salesperson or broker in California or in any other jurisdiction for over twelve of the forty-eight months immediately prior to filing his application in Virginia on March 17, 1989. Contrary to Carpenter's assertion, the renewal of his California license within the permitted grace period was not the equivalent of that license being in full force during the time of its expiration. It is clear that Carpenter could not have lawfully conducted a practice as a real estate broker in California between June 25, 1984 and May 6, 1986. In fact, Carpenter took the extraordinary step of contacting the California real estate authority to

ensure that the business he was conducting during that period did not require licensure.

Similarly, the record does not support Carpenter's contention that he continued to practice real estate as a profession during the forty-eight month period prior to filing his application. Although he was involved in real estate transactions for limited partnerships and undoubtedly used his knowledge of real estate practice in these transactions, he did not, and, for a substantial period, could not lawfully act as a realtor for the partnerships. No credible evidence in the record establishes that Carpenter was, apart from his work for the partnerships, otherwise "actively engaged" in the practice of real estate for the requisite twenty hours per week. Accordingly, even if Carpenter had been licensed for the requisite time, he was still ineligible to receive a real estate broker's license through reciprocity because he did not meet the other principal requirement of the regulations.

■   Carpenter further asserts that even if he was ineligible to receive a license through reciprocity, his application was made with a good faith belief in his eligibility. Accordingly, he asserts that the board's determination that he obtained his license by fraud was in error, and absent such a determination, the board was without power to revoke his license.

The evidence in the record, however, supports the board's determination of fraud.

[Civil] [f]raud is in the nature of a crime, and while it does not require proof beyond a reasonable doubt, it is the established doctrine in this State that it must be distinctly charged and proved by clear and satisfactory evidence. Doubts as to the preponderance of the evidence will not suffice to avoid a transaction on the ground of fraud. The law presumes innocence rather than guilt, and fraud will not be presumed on doubtful evidence or circumstances of mere suspicion.

*Neff v. Edwards*, 148 Va. 616, 626, 139 S.E. 291, 294 (1927) (citation omitted).

The determination of an issue of fact is to be made solely on the basis of the whole evidentiary record provided by the agency and the reviewing court is limited to that agency record. "A reviewing court may not, however, use its review of an agency's procedures as a pretext for substituting its judgment for the agency on factual issues decided by the agency." A reviewing court "must review the facts in the light most favorable to sustaining the [agency's] action," and "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted."

*Johnston–Willis, Ltd. v. Kenley,* 6 Va.App. 231, 263, 369 S.E.2d 1, 18–19 (1988) (citations omitted). However, whether in a criminal prosecution, a civil trial, or an administrative proceeding, proof of an intent to defraud may be shown by circumstantial evidence which, in some cases, "is practically the only method of proof." *Parks v. Commonwealth,* 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1738, 68 L.Ed.2d 224 (1981).

Here, the record shows that Carpenter was aware of the requirements for reciprocity licensure and that he submitted supporting materials to the board as part of his application alleging his compliance with those requirements. Carpenter failed to disclose that his California broker's license had not been in force during the full period required for reciprocity licensure. The record further shows that some of his supporting materials were falsified.

The Administrative Process Act requires a reviewing court to grant great deference to an agency's determination of factual issues where there is substantial evidence to support the agency's decision. *Johnston–Willis,* 6 Va.App. at 242, 369 S.E.2d at 7; *see also Clay,* 9 Va.App. at 162, 384 S.E.2d at 627–28. The record before the circuit court and before us now on appeal contains substantial evidence in support of the board's finding that Carpenter knew he was ineligible for reciprocity licensure and committed a fraud upon the board in order to obtain his license.

■ Carpenter's assertion that his attestation of the application applied only to the truth of the contents of the application form and not to the supporting materials is patently insupportable. The regulations of the board required Carpenter to supply proof of his eligibility and to attest to his knowledge of the applicable statutes and regulations governing his application when he signed the application. He could not have obtained his license without the supporting material which was an integral part of his application and subject to the attestation on the application form.

Carpenter also asserts that, even if he was guilty of fraud in obtaining his license, the board lacked the authority to revoke his license under its statutory authority and because such revocation would be manifestly unfair in that it deprives him of his livelihood and the benefit of his investment in his profession. We disagree.

■ As previously noted, the statutory mandate of the board to regulate within its area of expertise is afforded liberal construction. Inherent in that grant of authority must be the power to revoke a license improperly issued by reason of material fraud or misrepresentation on the part of the applicant. See Mounts v. Chafin, 186 W.Va. 156, 411 S.E.2d 481, 487–88 (1991); Padilla v. Real Estate Comm'n of State of New Mexico, 106 N.M. 96, 739 P.2d 965, 966 (1987). Without such power, the board would lack an essential tool for enforcing its authority to regulate the profession it oversees. See Code §§ 54.1–100 and 54.1–102; see also Clay, 9 Va.App. at 159–60, 384 S.E.2d at 626 (holding that fine and suspension of license for realtor misconduct was a valid exercise of the board's authority).

Carpenter further asserts that the doctrine of res judicata prohibits the board from revoking his license because the issuance and renewal of his license and the initial informal fact finding procedure of the board were all "case decisions" affirming his eligibility for reciprocity licensure. We disagree.

■ The issuance and renewal of Carpenter's license were not "case decisions." The granting and renewal of profession-

al licenses are part of the administrative, ministerial duties of the board. Such duties do not involve the quasi-judicial process of determining whether a person subject to regulation by the board is in violation of applicable statutes and regulations. *See* Code § 9–6.14:4(D).

■ Similarly, the initial informal fact finding procedure did not result in a final, appealable "case decision." Rather, it was the first step in the process for arriving at such a decision. To hold that an initial, informal decision of a board or agency has the force of a final determination for purposes of *res judicata* would forestall the normal operation of the procedures established by administrative agencies to proceed from efficient, informal proceedings, to greater levels of formal fact finding before rendering final determinations. Every complaint and claim brought before an administrative agency would have to proceed immediately to a full and complete hearing at great cost to the Commonwealth and the parties. Such an approach is neither wise nor required by due process.

■ Finally, we address Carpenter's assertion that the board, because of its prior determinations during informal proceedings and its efforts to enforce the effect of those determinations, was biased against his case and should have recused itself from considering and ruling on the findings of the hearing officer. Carpenter's reliance on *Virginia Board of Medicine v. Fetta*, 12 Va.App. 1173, 408 S.E.2d 573 (1991), *aff'd*, 244 Va. 276, 421 S.E.2d 410 (1992), is misplaced. In *Fetta*, we affirmed the circuit court's determination that the Board of Medicine had violated its own procedures by conducting a hearing with a hearing officer and three members of the board, rather than by the hearing officer alone or with the full board present. We held that the purpose of this procedure was to give the members of the board "information on an equal basis." *Id.* at 1175–76, 408 S.E.2d at 575.

Nothing in *Fetta* prohibits an administrative body from conducting the final review of a case which it has previously considered in informal proceedings prior to the formal hearing. Accordingly, we hold that the board's consideration of

Carpenter's case during informal proceedings prior to the hearing, including its efforts to enforce the effect of those proceedings, was both proper and in accord with the board's regulations and the Administrative Process Act. *See* VREBR § 3.10; Code § 9–6.14:11 *et seq.*

For these reasons, we affirm the decision of the circuit court upholding the board's revocation of Carpenter's real estate broker's license.

*Affirmed.*