# CIRCUIT COURT OF THE CITY OF RICHMOND

Frances Broaddus Crutchfield
and Henry Ruffin Broaddus

v.

State Water Control Board,
Department of Environmental Quality,
and Hanover County

March 11, 2004

Case No. HK-1193

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on appeal under the Administrative Process Act (Va. Code § 2.2-4000 et seq.), following a decision of the State Water Control Board (the Board) to issue a Virginia Pollutant Discharge Elimination System Permit to the County of Hanover, Virginia, to discharge treated wastewater from the county's new Totopotomoy Wastewater Treatment Plant into the Pamunkey River.

The petitioners are Frances Broaddus Crutchfield and Henry Ruffin Broaddus, owners of Newcastle Farm. The Pamunkey River borders several miles of the farm, which is listed in the National Historic Landmark Registry and as a Virginia Historic Landmark. The project would require a 5000 foot discharge pipe across the Newcastle Farm, an ingress-egress easement road over 5.8 acres of the farm, and an acre of land on Newcastle Farm to construct reaeration and discharge structures. Petitioners contest the issuance of the permit alleging that discharge of the treated waste water will pollute the Pamunkey River and deprive the owners of recreational uses of the River. They also claim that the permit will affect rare, threatened, or

endangered species of mussels at or near the discharge site. In addition, the discharge would significantly, adversely impact the anadromous fish spawning and migration in the Pamunkey River. It will also adversely impact the Boy Scouts, canoeists, fishermen, and others who use portions of the river bordering Newcastle Farm and downstream from the discharge site for various recreational uses such as camping, picnicking, swimming, nature observation, and other forms of outdoor water-based recreation. The respondents are the Virginia State Water Control Board, Department of Environmental Quality, and Hanover County.

The State Water Control Law prohibits any discharge of pollutants into Virginia's waters except in compliance with a permit issued by the Board. Va. Code § 62.1-44.5. Under the authority of the water control law, the Board issues permits to municipal sewage treatment plants. *See* Va. Code § 62.1-44.19 and 9 VAC 25, ch. 31 (Virginia Pollutant Discharge Elimination System Permit Regulations).

After the County applied for the permit and before its issuance, the Board conducted a public hearing during which the petitioners were present noting objections to the project. They also submitted their objections in writing.

The petitioners contend that the Board violated its own regulations and applicable federal regulations by issuing the permit. These regulations require the Board to determine that the proposed discharge will not cause or contribute to violations of water quality, impair the uses of the river waters, or harm human, plant, or animal life. They argue that the Board failed to make these findings and that, moreover, the record is lacking in substantial evidence to support the Board's action.

More specifically, petitioners point to the record, which supports that the Pamunkey River has had low levels of oxygen at various times in the past. Respondents agree, but contend that the low levels of oxygen in the river are only evident during periods of low water flow due to naturally occurring conditions. It is for this reason, according to the respondents, that the DEQ staff recommended, and the Board issued, a permit with stringent discharge limits that are self-sustaining, that is, limits that will not cause or contribute to water quality violations. In other words, the Board concluded that the limitations placed on the permit would succeed in not worsening the condition of the river.

Petitioners argue, however, that any discharge into the river will contribute to the oxygen problem. They cite Board regulations disallowing the issuance of permits for new discharges that will "contribute to the violation of water quality standards," unless the Board has "performed a pollutants loan allocation for the pollutant to be discharged" and there are already sufficient pollutant load allocations to allow for such discharge as well as the

requirement that the dischargers are subject to compliance schedules. Thus, the Board cannot issue permits that either worsen the water quality or maintain the status quo substandard quality.

Respondents argue that the Board regulations do not apply because they only apply to officially designated impaired waterways. The Pamunkey River was not listed as impaired by the State or the Federal Environmental Protection Agency at the time the permit issued. Further, even if the river had such a designation, the regulations only prohibit discharges that will contribute to the violation of water quality standards and do not require the establishment of a pollutant load allocation program prior to the issuance of the permit, unless the discharge will contribute to the pollution. They complain that petitioners have supplemented their appeal with documents and arguments never put before the Board. Further, petitioners have failed to assign the positions they take now in either their original or amended petitions for appeal. The documents are contained in petitioners' Supplemental Appendix along with a proposed regulation created after the permit was issued. Some of the documents, they contend, actually support the issuance of the permit rather than defeat it.

Answering respondents' argument, petitioners contend that issuing a permit for a discharge that will maintain, but not ameliorate, the water quality standard is contrary to the purposes of the regulatory program. In addition, the language and structure of the regulations clearly indicate that discharges that maintain the status quo are not permitted. Lastly, they contend that the regulations should be interpreted to mean that a new discharge may not be allowed unless it helps to attain waste quality standards. As to additional evidence not before the Board and arguments not previously assigned, under Va. Code § 2.2-4827, the court can allow "any allowable and necessary proofs adduced in court . . ." and all bases for the appeal have been made from the time of objections during public comment and is in the petition for appeal.

*Standard of Review*

The parties' contentions in the context of an appeal of an administrative determination present issues of the appropriate standard of review. On the question of the application of the regulations, the issue is whether the agency acted in accordance with the law. *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242 (1988). For such an assigned error, the court may reverse the agency's decision only if the agency's construction of its regulation is arbitrary and capricious or fails to fulfill the agency's purpose as defined by its basic law. *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 161 (1989).

Second, the factual findings made by the agency must be supported by evidence in the record. *Johnston-Willis* at 242. Where there has been a formal agency hearing, the determination of fact questions is to be made "upon the whole evidential record provided by the agency." *Virginia Real Estate Comm'n v. Bias*, 226 Va. 262, 269 (1983). The findings must be supported by substantial evidence, which means "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Id.* (*quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)) (emphasis in *Bias*). Agency findings of fact may be rejected only if, after considering the record as a whole, the reviewing court determines that a reasonable mind would necessarily come to a different conclusion. *Id.* Applying these standards, the court finds no merit in the petitioners' appeal and will decide the matter in favor of the respondents. The court comes to this conclusion considering the record and any arguably additional evidence and grounds not previously provided.

## Regulation of Sewage Discharge

Pursuant to Va. Code § 62.1-44.19(A), any owner of a sewage treatment facility must apply to the Board for a permit. Under the (B) part of the statute "[t]he Board shall approve such application if it determines that minimum treatment requirements will be met and that the discharge will not result in violations of water quality standards."

As noted, upon approving the permit, the Board, imposed so-called self-sustaining limits, as has been its practice in other instances. These apply to the effluent discharge and are supposed to establish a level of treatment of the discharge that will not cause or contribute to water quality violations in the receiving body of water, the Pamunkey River. According to the Board and its staff, at this level of treatment, the concentration of oxygen-demanding pollutants in the discharge is so low that they exert no oxygen demand load on the water in the river. The Board argues that what determines impact on the water is not how many pounds of nutrients are discharged each day, as petitioners contend, but the concentration of nutrients in the discharge.

The court agrees, as respondents assert, that the provisions of the 9 VAC 25-31-50(c)(9) pertaining to new discharges to officially designated impaired waterways are not applicable.[1]

---

[1] Indeed petitioners seem to say that the Pamunkey River is a designated impaired waterway but the evidence respondents cite in the record refutes this, especially in light of evidence that the federal EPA approved the issuance of the permit.

9 VAC 25-31-50(c)(9) provides:

> No [VPDES] permit may be issued. . . .
> 9. To a new source or a new discharge, if the discharge from its construction or operation will cause or contribute to the violation of water quality standards. The owner or operator of a new source or new discharger proposing to discharge into a water segment which does not meet applicable water quality standards or is not expected to meet those standards even after the application of the effluent limitations required by the law and §§ 301(b)(1)(A) and 301(b)(1)(B) of the CWA, and for which the [SWCB] has performed a pollutants load allocation for the pollutant to be discharged, must demonstrate, before the close of the public comment period, that:
> a. There are sufficient remaining pollutant load allocations to allow for the discharge; and
> b. The existing discharges into that segment are subject to compliance schedules designed to bring the segment into compliance with applicable water quality standards.

As the regulation reads, it does not prohibit new permits where the discharge will not cause or contribute to violation of water quality in the receiving waterway. Nothing in the regulation requires prohibiting a discharge that violates existing water quality standards unless done pursuant to a pollution load allocation program. It seems that the regulation does not apply where the proposed discharge will not cause or contribute to a water quality standards violation. There is a basis in the record for the Board's imposition of the self-sustaining limits as a condition for the issuance of and for operations under the permit; thus, the level of effluent treatment provided by those limits can be said to not cause or contribute to water quality violations. In other words, the self-sustaining limits require that the effluent discharge be treated so that any pollutants that may be present will not have any impermissibly deleterious effect upon the river. Thus, there is a basis for concluding, as the Board did, that, with the limits in place, the effluent will not further contribute to lower dissolved oxygen levels. The limits are supported, for example, in the June 2, 1997, Curt Linderman memorandum entitled "Results of Stream Sanitation Analysis and Effluent Limit Recommendation Totopotomoy Wastewater Treatment Plant, Hanover County Discharge to Pamunkey River and the A. J. Anthony Swamp" and the guidance memorandum dated March 9, 1987, entitled "Advisory Notification of Effluent Limits for Swamp and Marsh Waters."

The question of the applicability of the regulation presents both questions of law and fact. On the one hand, respondents argue that the regulation has no application. On the other, they rely on the agency's factual findings that the self-sustaining limits go as far as necessary to uphold that the expected effluent will neither cause nor contribute to lowering water quality. The record does support by evidence that the limits, when in place, will prevent harm to the river in terms of lessening water quality. Any requirement for a pollutant load allocation, as contained in the regulation, is not thereby implicated. Essentially therefore, there is no basis for a pollutant load allocation because there is evidence to support that there is no pollutant load to allocate. In other words, reading the regulation as a whole, there is no obligation on the Board to not issue a permit until a pollutant load allocation is performed for the pollutants to be discharged. Petitioners fail on the point that the regulation applies, and they fail to show that evidence does not or would not support that, with self-sustaining limits, the river's condition would be caused to violate water quality standards.

## The Question of Specific Findings

As noted, petitioners argue that, before issuing the permit, the Board is required to make specific findings based on evidence that the proposed discharge will neither cause nor contribute to water quality violations and that the proposed discharge is compatible with existing uses by wildlife and recreation.

In *Browning-Ferris Indus. v. Residents Involved in Saving the Env't*, 254 Va. 278 (1997), the primary issue was whether the Department of Environmental Quality was required to make an explicit finding that a new solid waste facility posed "no substantial present or potential danger to human health or the environment" under Va. Code § 10.1-1408.1. In ruling, the Court observed that a court may set aside an agency action, even if supported by substantial evidence, if the agency failed to comply with a substantive agency directive. *Id.* at 284. In *Browning*, guided by a statutory directive in Va. Code § 10.1-1408.1(D), the Court concluded that the Director of DEQ was so required to make a specific determination which must be based on facts in the agency record. Here, under the law and regulations considered, there is no requirement that the Board or its director make such an explicit determination. Instead, they require the Board to issue permits that are compliant with applicable provisions of state and federal law, including water quality standards. And considering Va. Code § 62.1-44.15, the statute that authorizes the Board to issue such permits, there is no requirement that the Board or its Director make explicit findings before issuing a water sewage discharge permit.

## Conclusion

For all of the foregoing reasons, according to the cited standards of review, the court finds no merit in the petitioners' contentions and upholds the Board's issuance of the permit in question.