BENTON, J.,
dissenting.
Ordinarily, I would concur in affirming the commission’s decision because the record established (i) that the employer’s application for a hearing seeking termination of the award indicated benefits had been paid through the date of filing the application and (ii) that, on the day the employer mailed its application for a hearing, the employer had drawn a check payable to the employee for benefits due through that day. The record also established that the check was mailed to the employee the day after the employer mailed the application to the commission. Thus, the literal requirements of Rule 1.4(C)—that “compensation shall be paid through the date the application was filed”—appear to have been met. Cf. Specialty Auto Body v. Cook, 14 Va.App. 327, 329, 416 S.E.2d 233, 235 (1992) (holding that the requirements of Rule 13, the predecessor to Rule 1.4(C), were not met where the employer suspended payments to the employee on August 26, 1990, two days before the employer filed its application for a hearing on August 28, 1990). Of course, this presupposes that the commission would have interpreted Rule 1.4(C) to be satisfied by a prompt mailing or delivery of the payment to the employee, a finding the commission did not explicitly make in this case.
I.
I dissent and write separately for two reasons. First, it is important to note that the critical issue under Rule 1.4(C) is not the date written on the check but, rather, whether the check is drawn in an amount sufficient to pay the employee benefits due through the date of filing the application.
*94 Second, the commission’s decision in this case is contrary to its earlier decisions in Mullins v. T & J Trucking, 73 O.W.C. 56 (1994), and Rule v. Southside Reg’l Med. Ctr., 74 O.W.C. 40 (1995). Those decisions interpret Rule 1.4(C) in a different way, but not in an unreasonable way. In Mullins, the employer filed its application for hearing on May 6, 1994 and mailed, three days later, a check to the employee paying benefits through May 6, 1994. 73 O.W.C. at 56-57. The commission ruled the application did not satisfy Rule 1.4(C) because “compensation must be paid to the employee through the filing date at the time of filing.” Id. at 57 (emphasis added). Thus, the employer’s delay in mailing the benefits check was determinative.
In Rule, the employer filed an application for hearing on December 9, 1994, see 74 O.W.C. at 41, and drew a check that same day paying benefits through December 4, 1994, the date the employee refused selective employment. Id. at 42. Because the check was mailed December 12, 1994, the commission ruled “that payment was not mailed to the [employee] until three days after the application was filed and eight days after the date through which payment was required ... [and, therefore,] the employer’s application failed to comply with Rule 1.4(C).” Id. (emphasis added). Again, the delay in mailing the benefits check caused a failure to comply with the rule.
I believe the rule of decision that the commission established in Mullins and Rule is contrary to the decision in this case, where the check was mailed a day after the date the employer filed the application. Applying the logic of Mullins, the application was invalid because compensation was not paid “at the time of filing.” 73 O.W.C. at 57. Applying the logic of Rule, the application was invalid because the “payment was not mailed to the [employee] until ... after the application was filed.” 74 O.W.C. at 42.[5]
*95 When the commission decided that the application in this ease satisfied Rule 1.4(C), the commission did not cite or discuss either Mullins or Rule. Instead, the commission relied upon its unpublished decision in Williams v. Williams, 99 VWC UNP 1917520 (1999) (October 21, 1999). Discussing whether the application for hearing, which the employer filed on December 14,1998, complied with Rule 1.4(C), the commission ruled as follows in Williams:
The record indicates that the last compensation check was dated December 14, 1998, and postmarked December 15, 1998. The explanation of payment, submitted by the [employee], indicated that the check was for temporary total disability benefits from November 3 through December 17, 1998. There is no evidence that he was not paid compensation through December 16, 1998. The fact that the check was dated December 14,1998, does not mean that it covered payments only until that date. Accordingly, the Deputy Commissioner properly found that benefits had been paid through December 16, 1998, and accepted the employer’s Application for Hearing.
Although the commission’s opinion in Williams did not disclose the specific arguments advanced in that case, the commission’s ruling suggests that the disputed issue was whether the check dated December 14, 1998 could represent payment for benefits through December 16, 1998. In short, in Williams, the commission reached the unremarkable and obvious conclusion that the amount of the check, not the date of the check, determined whether it paid benefits through the date of filing the application.' In reaching this conclusion, the commission had no occasion in Williams to discuss Mullins or Rule and, therefore, did not.
*96 II.
A cardinal principle of administrative law is that an agency’s interpretation of its own rules will not be overturned unless arbitrary and capricious or unreasonable. Nicholson v. Clinchfield Coal Corp., 154 Va. 401, 404-05, 153 S.E. 805, 806-07 (1930); Virginia Real Estate Bd. v. Clay, 9 Va.App. 152, 159, 384 S.E.2d 622, 626 (1989). We have applied this principle to the commission’s interpretation of its rules. Gallaban v. Free Lance Star Publishing, 41 Va.App. 694, 700, 589 S.E.2d 12, 15 (2003).
“The commission has statutory authority to ‘make rules and regulations for carrying out the provisions of [the Act].’ ” Ratliff v. Rocco Farm Foods, 16 Va.App. 234, 237, 429 S.E.2d 39, 41 (1993) (citing Code § 65.2-201(A)). “Because the [commission] promulgates these rules and has the obligation and right to enforce them, we would prefer that it have the first opportunity to construe its own rules.” Brushy Ridge Coal Co. v. Blevins, 6 Va.App. 73, 78 n. 2, 367 S.E.2d 204, 206 n. 2 (1988). We accord great deference to the interpretation given by the commission to its rules. “Consequently, our review is limited to a determination whether the commission’s interpretation of its own rule was reasonable.” Classic Floors, Inc. v. Guy, 9 Va.App. 90, 93, 383 S.E.2d 761, 763 (1989).
Arellano v. Pam E. K’s Donuts Shop, 26 Va.App. 478, 482-83, 495 S.E.2d 519, 521 (1998). Likewise, we have held that “ ‘[t]he commission’s interpretation will be accorded great deference and will not be set aside unless arbitrary or capricious.’ ” Estate of Kiser v. Pulaski Furniture Co., 41 Va.App. 293, 299, 584 S.E.2d 464, 467 (2003) (citation omitted).
In this case, the commission’s newfound interpretation of Rule 1.4(C) has the character of being arbitrary and capricious. Relying upon an unpublished opinion without any discussion of the contrary interpretation in its published opinions, the commission has adopted an interpretation of Rule 1.4(C) that is inconsistent with its earlier pronouncements. Moreover, the commission’s opinion fails to explain this devia *97 tion from its earlier interpretation; therefore, it demonstrates a lack of thoroughness in its consideration of the issues, evinces little validity in its reasoning, and lacks persuasiveness. Citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1577 (1947), the Supreme Court held, in a decision involving another administrative agency, that “[e]ven where the Commission has reached the right result for the wrong reason, its decision, unlike that of a trial court, will not be permitted to stand.” First Virginia Bank v. Commonwealth, 213 Va. 349, 351, 193 S.E.2d 4, 5-6 (1972).
[A] simple but fundamental rule of administrative law ... is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which [the legislature] has set aside exclusively for the administrative agency.
... [A]n important corollary of the foregoing rule ... [is:] If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency’s action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. In other words, “We must know what a decision means before the duty becomes ours to say whether it is right or wrong.”
Chenery Corp., 332 U.S. at 196-97, 67 S.Ct. at 1577-78 (citation omitted).
In view of the deficiencies in the commission’s opinion and the commission’s contradictory interpretations of Rule 1.4(C) as evidenced by Mullins, Rule, and the decision in this case, I would reverse this decision and remand to the commission for a determination which of the two conflicting interpretations *98 shall be the commission’s rule of decision in interpreting Rule 1.4(C). A remand is often appropriate when the record of an administrative agency contains a defect that falls within the expertise of the agency.
“It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points.” And “an appellate court is not without recourse in the event it finds itself unable to exercise informed judicial review because of an inadequate administrative record. In such a situation, an appellate court may always remand a case to the agency for further consideration.”
Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 507-08 (1983) (citations omitted). This is such a case.
I, therefore, dissent.

. The commission long ago ruled that an application that fails to comport with the requirements of its Rules is "void ab initio." Byrd v. C.E. Jones Logging Co., 55 O.I.C. 63, 66 (1973) (ruling that an applica *95 tion filed pursuant to Rule 13, the predecessor to Rule 1.4 was “not filed in accordance with the law and Rules of the ... Commission ... [and], therefore, void ab initio”). Whether such an application is of no effect or invalid or void is undoubtedly a decision that the administrative agency may reasonably determine in interpreting its rules. See Sargent Electric Co. v. Woodall, 228 Va. 419, 323 S.E.2d 102 (1984); Cook, 14 Va.App. 327, 416 S.E.2d 233.